**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 10a0412n.06**

**No. 09-1349**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 12, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| WALTER A. WILSON | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: CLAY, ROGERS, and COOK, Circuit Judges.

ROGERS, Circuit Judge. Walter Antraell Wilson appeals his conviction and 235-month sentence for being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Wilson was arrested after being apprehended a short distance from the scene where a man police believed to be Wilson fired a gun into the air outside of a bar. Police recovered a weapon approximately 150 feet away from where Wilson was arrested. Wilson was convicted after a jury trial, but he argues that the district court erred in instructing the jury that it could consider evidence of his alleged flight from the bar parking lot after the shooting as substantive evidence of Wilson's guilt. Wilson also argues that his sentence is unreasonable because the district court overemphasized his criminal history and did not address his arguments for a downward variance. The evidence presented at trial was sufficient to support a jury instruction on flight and the district court did not abuse its discretion in sentencing Wilson.

Around 2:00 A.M. on August 27, 2007, Officer Jeffrey Bouma of the Grand Rapids Police Department was on patrol in his marked patrol car outside of a bar. Bouma positioned himself just outside the parking lot to monitor the crowd at the bar, Julian's II, because he was on duty in the area and there had been problems at Julian's II around closing time in the past, including several fights and shootings. When the bar closed and the patrons began to leave, Bouma heard a disturbance coming from the entrance. Bouma then moved his car to a different position where he had a better view of the parking lot and entrance to Julian's II, and he saw an altercation involving approximately 20 people that looked like it was about to break into a fight. At this time, Bouma saw a heavyset African-American male standing just outside the large group in a gray sweatshirt, jeans, and a hat raise his hand and fire what appeared to be a handgun in the air.

As soon as Bouma saw and heard the gun fire, the people who had been congregating in the parking lot scattered. The individual who had fired the gun immediately turned and started moving towards Andre Street, just south of Julian's II. Bouma drove through the Julian's II parking lot towards Andre Street, but he lost eye contact with the shooter for an estimated 10 to 15 seconds. When Bouma turned onto Andre Street, he turned on his spotlight to search for the suspect and noticed someone matching the description of the person who fired the gun walking down the street "very fast." Bouma did not see anyone else on the street, and he turned on the flashing lights on his patrol car, activating the video camera. Bouma then pulled over his vehicle to try to make contact with the suspect, but Bouma realized that he had not put the car in park and the car was still rolling when he exited, so he got back into the car and drove towards the suspect, who had continued to jog away from Bouma. Bouma pulled his vehicle next to the suspect and ordered him at gunpoint to

get on the ground. The suspect immediately complied, and he was arrested and identified as Walter Wilson.

As Bouma was handcuffing Wilson, other officers arrived in response to Bouma's initial call for backup. Bouma did not discover a gun on Wilson, and Officer Eric Hornbacher started to search the path that Wilson had traveled in search of a firearm. After three to five minutes, Hornbacher located a revolver in the strip of grass between the sidewalk and Andre Street. Bouma read Wilson his rights, but Wilson denied that he shot the gun and gave a description of the person he claimed was the actual shooter. Approximately thirty minutes after Wilson's arrest, a crime scene technician photographed the area where the gun was found and performed tests to collect trace gunshot evidence from Wilson.

At trial, the Government put on several witnesses as part of its case-in-chief. Bouma testified to the facts described above, and the Government showed the jury a video taken from Bouma's patrol car after Bouma's dashboard camera activated automatically when Bouma turned on his flashing lights. Hornbacher estimated that he found the weapon between 100 and 150 feet away from the spot where Wilson had been arrested. The crime scene technician, Brian Reed, testified that he found two live rounds and one spent casing in the weapon. Reed also testified about the procedures he used to check for fingerprints, which he did not find on the gun, and the process of collecting samples for gunshot residue tests. Allison Murtha, a forensic scientist, then described the process of analyzing the gunshot residue samples and testified that she had analyzed the samples that Reed collected from Wilson. She testified that she found one "unique" gunshot residue particle on the back of Wilson's

left hand, one "consistent with" particle, and nine "single component particles."[1]  Murtha also testified that she found one unique particle on Wilson's right hand, zero consistent with particles, and fourteen single component particles.  Based on these tests, Murtha concluded that Wilson either had discharged a firearm, had been in close proximity to a firearm when it was discharged, or had come into contact with an environment or surface that previously had gunshot residue on it.  On cross-examination, Murtha acknowledged that lab tests conducted on people who were tested immediately after firing weapons in a firing range yielded hundreds or even thousands of unique particles.  A firearms expert also testified that Wilson was not charged with being a felon in possession of a firearm because the expert could not determine whether the weapon allegedly used was an antique, which would exclude it from the definition of firearm under federal law.

The Government also put on two witnesses who were in the Grand Rapids Courthouse Marshal's lockup with Wilson on July 15, 2008.  One of the men, Anton Mann, testified that he heard Wilson tell a man called Blunt that Wilson was in lockup because he had fired the gun at Julian's II.  Mann said he heard Wilson describe leaving the scene and stashing the gun before the police arrested him a block away.  According to Mann, Wilson had stated that he gave the officer a description of another man because Wilson felt the officer was not quite sure that Wilson was the shooter and Wilson felt like he could beat the charge because there were a lot of people in the

---

[1]Murtha testified that when a gun is fired, the weapon typically discharges particles containing lead, antimony, and barium.  Particles containing all three elements, which are unique to gunshot residue, are called unique particles.  Particles containing two of the elements are called consistent with particles, and particles containing one of the elements are called single component particles.

parking lot and the police could not pinpoint him as the shooter. Mann admitted that he had a lengthy criminal history and stated on cross-examination that he was facing 30 years to life for federal drug charges. Jonathan Bowman, known as "Blunt," then testified that he had been friends with Wilson for six or seven years, and that Bowman had been in lockup with Mann and Wilson as Mann described. Bowman initially testified that he could not recall many of the details of what was said, including whether Wilson had admitted firing the gun, but Bowman later stated on redirect examination that "[t]he truth would be that my friend shot the gun, I guess." Bowman also testified that he was awaiting sentencing for crimes that included the possibility of a life sentence, and that the terms of his plea agreement required him to cooperate with the Government.

Prior to closing arguments, Wilson objected to the proposed jury instruction on flight, which was based on pattern jury instruction 7.14. Wilson argued that there were approximately 20 people who scattered when the shots were fired and that Wilson stopped immediately when Bouma ordered. The district court overruled the objection and stated, "The court believes there [are] sufficient facts on the record that, if believed, justify the giving of the flight instruction." During closing argument, the Government argued that Wilson's alleged flight was evidence of his guilt, stating that although everybody ran when the shots were fired, Wilson continued to flee even after a police car with flashing lights began to pursue him. Wilson's counsel did not directly address the flight evidence during closing argument.

After closing arguments, the court instructed the jury and included the following instruction on flight:

You have also heard testimony that after the crime was supposed to have been committed the defendant fled the scene. If you believe the defendant fled the scene, then you may consider this conduct, along with all the other evidence in deciding whether the Government has proved beyond a reasonable doubt that he committed the crime charged. This conduct may indicate that he thought he was guilty and was trying to avoid punishment. On the other hand, sometimes an innocent person may flee for some other reason.

After five hours of deliberations, the jury sent a note to the court stating, "At this time, the jury cannot agree." The parties agreed to have the court read the jury an "Allen charge" instructing the members of the jury to continue their deliberations in a reasonable attempt to reach a verdict. The jury then passed several more notes to the court, and Wilson's counsel moved for a mistrial. As the district court heard arguments on how to proceed, the jury sent a note requesting to see the video of Wilson's arrest taken from Bouma's patrol car. Based on the last note, the court denied Wilson's motion for a mistrial. Less than an hour after watching the video, the jury returned a verdict of guilty.

At sentencing, Wilson did not dispute the calculations in the Presentence Report, which called for a mandatory minimum sentence of 15 years' imprisonment, based on 18 U.S.C. § 924(e), and a guideline sentence of 235 to 293 months based on a total offense level of 33 and a criminal history category of VI. Wilson argued for a variance downward to the statutory minimum of 15 years, based on Wilson's view that because no one was hurt, his possession of the ammunition was relatively benign. Wilson also argued that his violent felony conviction for fleeing and eluding a police officer caused a disproportionate increase in Wilson's sentence by making him an armed career criminal. The district court rejected Wilson's arguments for a downward variance and

characterized Wilson's criminal history as "atrocious," but the court sentenced Wilson to the low end of the guidelines range, 235 months' imprisonment. Wilson filed this timely appeal.

The district court did not abuse its discretion in instructing the jury that it could consider Wilson's alleged flight as substantive evidence that Wilson fired the gun. The probative value of flight evidence generally "depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977); *see United States v. Oliver*, 397 F.3d 369, 376 (6th Cir. 2005). This case is atypical because Wilson did not object to the admission of evidence of his alleged flight, as such an objection would have been fruitless; Wilson instead objected only to the jury charge instructing the jury that the alleged flight could be considered as substantive evidence of Wilson's guilt. Beginning with the Fifth Circuit in *Myers*, courts have generally applied the same four-part test to determine whether the evidence warrants a jury instruction on flight: "a flight instruction is improper unless the evidence is sufficient to furnish reasonable support for all four of the necessary inferences." *Myers*, 550 F.2d at 1050. Here, there was sufficient evidence to allow a reasonable jury to draw each of the required inferences. First, sufficient evidence existed to support an inference that Wilson fled based on Bouma's testimony that he had observed Wilson walk very quickly away from the scene; the video taken from Bouma's dashboard camera corroborated Bouma's testimony by showing Wilson jogging down the street away from the crime. Similarly, there was sufficient evidence for a jury to infer that this flight was caused by guilt. Bouma testified

that Wilson continued to move away from Bouma even after Bouma turned on his flashing lights and pulled his patrol car next to Wilson. A jury would be able to infer from this evidence of consciousness of guilt that Wilson was aware that his alleged act of firing a weapon into the air could lead to his being charged with possession of ammunition. Finally, the jury could infer from this evidence of consciousness of guilt in possession of ammunition that Wilson was actually guilty of being a felon in possession of ammunition. Because there was reasonable evidentiary support for each of the *Myers* inferences, the district court did not abuse its discretion in giving the flight instruction.

The limited nature of the instruction also supports this conclusion. When relevant, flight evidence is admissible as an admission by conduct. *Oliver*, 397 F.3d at 376.

> The task for a District Court in determining whether to admit evidence of flight, thus, is to determine whether the proffered evidence in fact tends to prove guilt and not merely the terror that may befall an innocent person confronted by the criminal justice system, and whether the evidence, even if probative of guilt, is so prejudicial that its admission offends Fed. R. Evid. 403.

*United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989). Here, the limiting instructions in the jury charge minimized the potential for prejudice to Wilson. The court stated that the jury could consider evidence of flight *if* it believed that the defendant fled the scene, and cautioned that while the evidence *may* indicate that the defendant thought he was guilty and was trying to avoid punishment, "sometimes an innocent person may flee for some other reason." The jury instructions were appropriately limited, allowing the jury to consider evidence of flight, along with all the other evidence, only if it believed that Wilson did in fact flee and that his flight was probative of his guilt.

Because there was sufficient evidence to support an instruction on flight, the court need not determine whether any error in offering such a limited jury instruction would be harmless.

Wilson argues that the district court should not have given the flight instruction because Wilson merely left the scene of a shooting along with all the other witnesses, but this argument fails because there was sufficient evidence for a jury to infer from Wilson's actions that he was fleeing out of guilt. Wilson's argument that fleeing in the face of gunfire late at night in a high-crime area is not remarkable implicates a lack of support for the second *Myers* inference—from flight to guilt. Officer Bouma testified that there were approximately twenty people involved in an altercation, all of whom scattered immediately after the gunshots. However, Bouma's testimony also establishes that Wilson continued to flee even after Bouma chased Wilson down another street in a patrol car with flashing lights and a spotlight; therefore, the jury could have inferred from this evidence that Bouma fled out of guilt, rather than fear of the real shooter. Moreover, that Wilson was motivated to flee by guilt need not be the *only* permissible inference from the evidence presented at trial. In *United States v. Touchstone*, 726 F.2d 1116, 1118-19 (6th Cir. 1984), this court affirmed the district court's decision to allow flight evidence and a jury instruction on flight when the defendants failed to show up after the third day of trial, despite the fact that their continued presence at trial was not required under Federal Rule of Criminal Procedure 43(b)(1). Because there was reasonable support for an inference that Wilson fled the scene out of guilt, rather than fear of the actual shooter, the district court did not abuse its discretion in giving the flight instruction.

Although Wilson also argues that the instruction should not have been allowed because there was no connection between the flight and a law enforcement action, this argument fails because of

the immediacy of the alleged flight in relation to the crime charged. Wilson mistakenly characterizes the issue as one of a "linkage between the flight and some sort of law enforcement action," but it is on the threat of law enforcement that the inquiry turns. The question is not whether Wilson knew he was being pursued by police, as Wilson suggests, but whether a jury could infer that Wilson fled out of fear of prosecution for being a felon in possession of ammunition. The requirement that a jury be able to draw an inference between flight and guilt of the crime charged is usually met when the defendant flees immediately after the commission of the crime for which he is being prosecuted. "For flight evidence to be admissible, the timing of flight must itself indicate the sudden onset or the sudden *increase* of fear in the defendant's mind that he or she will face apprehension for, accusation of, or conviction of the crime charged." *Dillon*, 870 F.2d at 1128. Firing a weapon into the air outside a crowded bar could have triggered the onset of fear in Wilson's mind that he would be prosecuted for being a felon in possession of ammunition. Because the flight occurred immediately after Wilson allegedly fired a gun into the air, an illegal act that would have led to Wilson's arrest and probable prosecution for being a felon in possession of ammunition, there was reasonable evidentiary support for an inference that Wilson left the scene out of an increase of fear that he would be charged with being a felon in possession. The district court correctly determined that the evidence was sufficient to support a jury instruction on flight.

The district court also did not abuse its discretion in sentencing Wilson. The Government argues that this court should review Wilson's objections to his sentence under plain-error review because Wilson failed to object to the sentence after it was announced. Wilson is not entitled to

relief because even under the more lenient abuse-of-discretion standard, Wilson cannot show that his sentence was procedurally or substantively unreasonable.

Wilson's sentence was procedurally reasonable. "'A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration.'" *United States v. Jones*, 489 F.3d 243, 250-51 (6th Cir. 2007) (quoting *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006)) (internal quotation marks omitted). Here, the sentencing transcript reflects that the district court considered the § 3553(a) factors in determining the sentence, acknowledged that the guidelines were advisory, and considered Wilson's arguments for a downward variance. This is sufficient to establish that Wilson's sentence was procedurally reasonable.

Wilson argues that the district court erred in referring to Wilson's "atrocious" criminal history because there was no prior criminal history that had not already been counted in the calculations of the guidelines range, but this argument clearly lacks merit. Title 18 U.S.C. § 3553(a)(1) instructs sentencing courts to consider "the history and characteristics of the defendant" in imposing a sentence. "The guidelines represent the Sentencing Commission's attempt to reconcile the same § 3553(a) factors that district courts must consider in sentencing defendants." *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). Therefore, it is not only permissible, but salutary that the district court would discuss the same criminal history that comprised Wilson's criminal history score. Wilson cites *United States v. Matheny*, 450 F.3d 633, 641 (6th Cir. 2006), for the proposition that a sentencing judge should focus on prior criminal conduct that was not

counted in the calculation of the criminal history score, but the court in that case was reviewing an above-guidelines sentence. In explaining that two of Matheny's previous convictions were not counted in his criminal history score and stating that Matheny's criminal history category understated Matheny's criminal history, the court was merely explaining the district court's decision to impose a 36-month sentence when the guidelines recommended a sentence not greater than 30 months' imprisonment. *Id.* Nothing in *Matheny* supports Wilson's claim that a sentencing court should focus on criminal history not considered by the guidelines in determining a defendant's sentence.

That the district court did not specifically address all of Wilson's reasons for a downward variance does not affect the procedural reasonableness of Wilson's sentence. Wilson asserts that the district court failed to consider his arguments that he defused a dangerous situation in breaking up a crime, that Wilson's previous conviction for flight from the police did not warrant an increase in his sentence, and that the fifteen-year sentence Wilson requested represented "flat time" that Wilson would serve in full. It is true that the record should reflect that a district court considered the defendant's arguments for a lower sentence, *see Jones*, 489 F.3d at 251, and the record here reflects just that. The court addressed the circumstances surrounding Wilson's possession of ammunition, including the fact that Wilson fired a round of ammunition in the parking lot of a bar in a high-crime area. The district court also acknowledged Wilson's arguments regarding the increase of the sentence as a result of the application of the Armed Career Criminal Act. Although the district court did not specifically address Wilson's argument that a 15-year sentence was appropriate because the sentence would involve flat time, "a sentencing judge is not required to explicitly address every mitigating argument that a defendant makes, particularly when those arguments are raised only in

passing." *United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008). Wilson raised the flat-time argument only in the context of the broader argument that the 15-year sentence would be sufficient to punish Wilson given the relatively benign facts of the case. The district court considered this argument and explained its reasons for rejecting the argument on the record.

Wilson's sentence was also substantively reasonable. A sentence is substantively reasonable if the length of the sentence is reasonable in light of the § 3553(a) factors. *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008). Because the district court sentenced Wilson to a within-guidelines sentence, the sentence is entitled to a presumption of reasonableness. *Vonner*, 516 F.3d at 389. Wilson's arguments do not rebut the presumption that his within-guidelines sentence was reasonable. A sentence is substantively unreasonable when a sentencing court fails to consider relevant sentencing factors, gives an unreasonable amount of weight to a relevant factor, selects a sentence arbitrarily, or bases the sentence on impermissible factors. *Jones*, 489 F.3d at 252. Because the district court's determination of Wilson's sentence represented a careful consideration of the § 3553(a) factors, did not over-emphasize any particular factor, and did not rely on impermissible reasons, Wilson's sentence was substantively reasonable.

For these reasons, the judgment of the district court is affirmed.