61 F.3d 902
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Oster WITHERSPOON, a/k/a Little Man, Defendant-Appellant.
 No. 94-5678.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 4, 1995.
Decided: July 25, 1995.
 
 ARGUED: Dale Thomas Cobb, Jr., Belk, Cobb, Infinger & Goldstein, P.A., Charleston, SC, for Appellant. Benjamin A. Hagood, Assistant United States Attorney, Charleston, SC, for Appellee. ON BRIEF: J. Preston Strom, Jr., United States Attorney, Charleston, SC, for Appellee.
 Before WILKINSON and WILLIAMS, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 HEANEY, Senior Circuit Judge:
 
 
 1
 A jury found Oster Witherspoon guilty of (1) one count of conspiracy to possess and distribute heroin, (2) one count of operating a continuing criminal enterprise ("CCE"), (3) one count of possession with intent to sell heroin, (4) one count of conspiracy to launder money, and (5) one count of money laundering. The district court imposed concurrent sentences of 400 months for the CCE count and 420 months for the substantive drug and money laundering counts. On appeal, Witherspoon contends that (1) the evidence was insufficient to establish a continuing criminal enterprise, (2) testimony from two law enforcement officers regarding alleged prior uncharged misconduct was erroneously admitted, and (3) the jury should not have been allowed to consider his flight from South Carolina to New York as evidence of his guilt. For the reasons stated below, we affirm.
 
 DISCUSSION
 1. Continuing Criminal Enterprise
 
 2
 According to the CCE statute, a person is guilty of operating a continuing criminal enterprise if he or she undertakes the enterprise in concert with "five or more persons with respect to whom [the defendant] occupies a position of organizer, a supervisory position, or any other position of management...." 21 U.S.C. Sec. 848(c)(2)(A). Witherspoon claims he is entitled to a judgment of acquittal on the CCE count because the prosecution presented insufficient evidence that he organized, supervised, or managed five or more people. In reviewing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Butler, 885 F.2d 195, 200 (4th Cir.1989) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 3
 The evidence here was sufficient to support the jury's verdict. There was testimony indicating that more than ten individuals were involved in the enterprise. For example, Charles Walker, a daily purchaser of heroin from 1981 to 1990, testified that through the years and on hundreds of occasions, ten to fifteen different dealers verified that they were selling Witherspoon's heroin. To establish that these individuals were organized, supervised, or managed by Witherspoon, the prosecution offered the testimony of several co-conspirators. Thomas Lance and Benjamin Holmes testified that Witherspoon criticized his brother Otto for mismanaging money and drugs. Moses King testified that he collected money and delivered drugs for Witherspoon. Charles Heyward testified that he tested the quality of heroin samples and delivered heroin for Witherspoon. Leroy Bryant testified that he packaged drugs and drove Witherspoon to drug transactions. Maurice Bostick and Earl Moultie testified that Witherspoon reprimanded them for not continuing to sell drugs in the rain. As these examples show, the record amply supports Witherspoon's conviction of the CCE charge.
 
 2. Uncharged Misconduct
 
 4
 Witherspoon next challenges the admission of the testimony of the two police officers who seized cocaine from him on March 9, 1991. Officer David Young testified that he and officer William Crawford were patrolling Simmons Street, a reportedly "drug-infested" area approximately three or four miles from Union Heights, where Witherspoon and a companion were walking door to door and asking questions. Young testified that an elderly woman answered her door and became irate upon learning that Witherspoon was looking for someone who did not live there. This confrontation drew the officers' attention. The officers asked Witherspoon if they could be of assistance. Young testified that, upon being questioned, Witherspoon became uneasy and replied that he was looking for someone he knew only as "Rhonda." Witherspoon was unable to provide the officers with a last name, address, or telephone number. Young testified that Witherspoon was wearing a pager that had approximately twenty rubber bands wrapped around it. Officers Crawford and Young both testified that, in their experience, it was common for drug dealers to use rubber bands to keep track of the day's sales. Witherspoon was also wearing a hooded sweatshirt with a large bellows pocket. Officer Young testified that, in the course of the interview, he saw a paper bag in Witherspoon's pocket and asked him to produce the bag. Witherspoon then handed over a paper bag that contained seven packets of cocaine. The officers then arrested him.
 
 
 5
 Witherspoon first argues that there was no probable cause to justify the search and seizure. Absent a showing of cause, motions to suppress evidence must be made prior to trial. Fed.R.Crim.P. 12(b)(3)(f). Although Witherspoon filed a pretrial motion to suppress certain other evidence, he did not challenge the testimony or evidence related to the March 9, 1991, seizure. Witherspoon did not show cause at trial nor on appeal for failing to pursue a pretrial motion to suppress this evidence. Because Witherspoon's motion to suppress was not properly raised below, we do not consider it on appeal.
 
 
 6
 Witherspoon next argues that this evidence was unfairly prejudicial, citing Fed.R.Evid. 403. The determination of whether the probative value of a piece of evidence is substantially outweighed by the danger of unfair prejudice is left to the discretion of the trial court and will not be upset except under "the most extraordinary of circumstances, where that discretion has been plainly abused." United States v. Simpson, 910 F.2d 154, 155 (4th Cir.1990). We find no merit to Witherspoon's argument. The seizure occurred within the time frame of the conspiracy and the CCE counts, it involved the same type of drugs as alleged in the indictment, and it was within the same general geographical area as the other overt acts of the conspiracy. The district court acted properly in admitting the evidence.
 
 3. The Flight Instruction
 
 7
 Witherspoon claims that the jury should not have been allowed to consider Witherspoon's flight to avoid being taken into custody as evidence of guilt. "Both the decision to give ... a jury instruction and the content of an instruction are reviewed for abuse of discretion." United States v. Russell, 971 F.2d 1098, 1107 (4th Cir.1992), cert. denied, 113 S.Ct. 1013 (1993). While flight evidence has been criticized as being of somewhat dubious value, see Wong Sun v. United States, 371 U.S. 471 (1963), its use is permissible provided that the court temper its decision with a measure of caution and an awareness of the inherent limitations of flight evidence. "If the government wishes to offer evidence of flight to demonstrate guilt, it must ensure that each link in the chain of inferences leading to that conclusion is sturdily supported." United States v. Beahm, 664 F.2d 414, 420 (4th Cir.1981). The standard by which we assess whether particular flight evidence can constitute admissible evidence of guilt was first articulated by the Fifth Circuit and has been adopted by this court in Beahm, 664 F.2d at 420:
 
 
 8
 [T]he probative value of flight as circumstantial evidence of guilt depends on the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.
 
 
 9
 United States v. Meyers, 550 F.2d 1036, 1049 (5th Cir.1977), cert. denied, 439 U.S. 847 (1978). Witherspoon argues that the evidence failed to sustain the requisite inferences connecting the alleged flight to actual guilt.
 
 
 10
 Based on our review of the record, we conclude that the evidence fully supported the drawing of each of these inferences. For example, Garland Calhoun testified that Witherspoon was aware of the impending indictment and that he intended to flee South Carolina. Both parties stipulated that a United States marshal apprehended Witherspoon in New York approximately two years after the indictment was issued. Finally, we note that there was ample evidence to support the jury's finding of actual guilt on the underlying substantive charges.
 
 
 11
 We conclude that the district court did not abuse its discretion in allowing the jury to consider Witherspoon's flight as evidence of guilt on the underlying CCE and conspiracy counts.
 
 CONCLUSION
 
 12
 We conclude that the evidence supports Witherspoon's conviction for engaging in a continuing criminal enterprise, that the district court did not abuse its discretion in admitting the uncharged seizure of cocaine as relevant proof of the conspiracy and CCE counts, and that the court did not err in allowing the flight instruction. Accordingly, we affirm.
 
 AFFIRMED