# IN THE SUPREME COURT OF IOWA

No. 13–0712

Filed February 19, 2016

Amended June 30, 2016

**STATE OF IOWA,**

Appellee,

vs.

**JOHN ARTHUR WILSON,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

A defendant seeks further review of a court of appeals decision affirming his convictions for forgery and falsifying a public document. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

Nicholas Dial of Benzoni Law Office, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kelli Huser and Kevin Cmelik, Assistant Attorney Generals, John P. Sarcone, County Attorney, and Justin Allen, Assistant County Attorney, for appellee.

**WIGGINS, Justice.**

The State charged the defendant with forgery and falsifying a public document. After a jury found the defendant guilty, the district court sentenced him to a term of imprisonment. The defendant appealed. We transferred the case to the court of appeals, and the court of appeals affirmed the convictions. The defendant asked for further review, which we granted. On further review, we allow the court of appeals decision to stand as the final decision of this court as to the district court's denial of the motion for new trial and the ineffective-assistance-of-counsel claims. We affirm the court of appeals decision affirming the district court's admission of evidence of the defendant's flight from law enforcement on August 11, 2011, because it was admissible as evidence of his consciousness of guilt for the charged crimes. We reverse the court of appeals decision affirming the district court's admission of evidence of the defendant's attempt to evade detection by law enforcement on September 20, 2011, because it was inadmissible as evidence of his consciousness of guilt for the charged crimes. However, because we find the improper admission of this evidence to be harmless error, we affirm in part and vacate in part the decision of the court of appeals and affirm the judgment of the district court.

## I. Background Facts and Proceedings.

In 2010, a jury convicted John Arthur Wilson of second- and third-degree theft. The district court sentenced Wilson to a term of imprisonment not to exceed seven years but released him from custody pending resolution of his appeal after he posted an appeal bond. The court appointed John Audlehelm to represent him in the appeal.

On July 12, 2011, the day before his proof brief was due in that appeal, Wilson filed an ethics complaint against Audlehelm with the Iowa Supreme Court Attorney Disciplinary Board and a pro se motion with this court requesting new counsel. At approximately 10:10 p.m. that night, Wilson delivered copies of the ethics complaint and the pro se motion to Audlehelm at his home. Wilson's mother accompanied him and filmed his interaction with Audlehelm. In both the complaint and the motion, Wilson alleged Audlehelm had not adequately prepared to represent him in his appeal.

On July 13, Audlehelm filed by mail a resistance to Wilson's pro se motion for new counsel and a motion requesting a one-week extension of the deadline for filing the proof brief. On July 18, Audlehelm filed the proof brief in person at the clerk's office.

On July 27, the clerk's office received a document captioned "withdrawal of resistance to motion for new counsel and motion to void brief and to withdraw." The document purportedly bore Audlehelm's signature, as did an accompanying certificate of service indicating copies of the document had been mailed to Wilson and the criminal appeals division of the attorney general's office. However, the director of the criminal appeals division testified at trial the division never received a copy of the document.

On August 2, Wilson filed by mail a document captioned "motion for enlargement of time for continuance of deadlines to file a pro se supplemental brief and a second motion for new counsel." The motion stated Audlehelm had "filed a motion to withdraw" as Wilson's counsel on July 27.

On August 4, this court issued an order granting the motion for appointment of new counsel. The order referenced the document

purportedly signed and filed by Audlehelm on July 27. The clerk mailed copies of the order to Wilson and Audlehelm that day.

On August 8, Audlehelm learned that someone had filed the document purporting to bear his signature when he received by mail his copy of this court's order granting the motion for appointment of new counsel. Audlehelm went to the clerk's office to inspect the document referenced in the order. After determining he did not sign or file the document, he reported the fraudulent filing to law enforcement and the county attorney's office. On August 10, Audlehelm filed a motion for review of the order granting the motion for appointment of new counsel in which he asked this court to review the document filed on July 27.

Detective Denise Schafnitz, a detective assigned to the unit of the Des Moines Police Department that investigates crimes involving forgery and fraud, led the initial investigation into the filing of the forged document. Based on her investigation, law enforcement obtained an arrest warrant for Wilson and a search warrant authorizing a search of Wilson's home for evidence that might establish he produced the forged document.

On August 11, three law enforcement officers headed to Wilson's home to serve the warrants. As they neared the home, they observed Wilson sitting behind the wheel of his truck talking on his cell phone. The officers parked their unmarked Ford Crown Victoria directly in front of the truck. Detective Schafnitz exited the Crown Victoria and began walking toward Wilson's truck. Though she was not in uniform, she wore her gun and her badge on her belt over her right hip. Wilson put his truck into reverse and began backing down the street. Detective Schafnitz ran back to the Crown Victoria. The officers began chasing Wilson, and he turned a corner while still driving in reverse. After the

officers followed, Wilson drove over the curb and through a yard before taking off again in another direction. At that point, a marked patrol car arrived and took over the chase, but Wilson did not stop. The marked patrol car pursued Wilson at high speeds through a residential neighborhood for several blocks, but eventually lost sight of him. The chase ended after Wilson disabled his truck in an accident and fled on foot. Because the officers were unable to locate Wilson, they did not arrest him that day. The officers executed the search warrant and seized one computer, two printers, several USB drives, CDs, DVDs, and several papers referencing this court from Wilson's home. The seized materials yielded no physical evidence Wilson produced the forged document in his home.

On September 20, law enforcement officers again went to Wilson's home to execute two arrest warrants[1] and another search warrant authorizing a search of Wilson's home for evidence relating to the forged document. The officers had been advised that Wilson might hide in a hole in the basement floor or behind a fake wall. Officer Patrick Moody, an officer assigned to the special weapons and tactics team trained to execute high-risk warrants, assisted in the execution of the warrants. A canine also accompanied the officers. When the officers entered the home, no one responded to their verbal warnings or the barking canine. With the canine's assistance, officers located Wilson hiding in a hole in the basement floor beneath a blue plastic storage bin. The officers arrested Wilson and seized a laptop computer found during their search

---

[1]The arrest warrant based on the investigation into the forged document filed with this court remained outstanding. The court issued a second arrest warrant after Wilson eluded law enforcement officers on August 11.

of his home. Forensic analysis of the laptop failed to yield any evidence related to the forged document.

The State charged Wilson with forgery and falsifying a public document. *See* Iowa Code § 715A.2(1)(*b*), .2(2)(*b*) (2011); *id.* § 718.5. In addition, the State separately charged Wilson with eluding law enforcement based on the events of August 11. *See id.* § 321.279(3). Trial for all three matters was originally set for December 14. During a hearing on Wilson's motion to dismiss the charges, his counsel orally moved to sever the eluding charge on the ground that it was unrelated to the forgery and falsifying charges. The district court granted the motion after the State declined to resist it.

The district court rescheduled the trial on the forgery and falsifying charges numerous times over the course of the following year. Wilson was represented by different court-appointed and privately retained counsel at various times, but he was unrepresented for several months after his privately retained counsel withdrew from representing him. On July 25, 2012, while Wilson was unrepresented by counsel, he filed a pro se "notice of intent to call expert witnesses and motion for compensation of witnesses" in which he requested the services of a private investigator and a forensic handwriting expert. On September 10, the district court appointed a private investigator to assist Wilson. However, the court did not explicitly address Wilson's request for a forensic handwriting expert.

On December 5, a jury trial on the forgery and falsifying-a-public-document charges commenced. Before trial, Wilson's counsel moved in limine to exclude "all references to Wilson being found by law enforcement in a hole in the basement of a house, and any reference to Wilson's pending eluding charge or to Wilson's prior bad acts." The judge denied the request to exclude all references to Wilson eluding law

enforcement and hiding in the hole. However, the judge excluded all references to hoarding or the condition of Wilson's home upon his counsel's oral request.

At trial, Detective Schafnitz and Officer Moody testified regarding the events that took place on August 11 and September 20, 2011, but did not reference the State charging Wilson with the crime of eluding a law enforcement vehicle. Christine Mayberry, deputy clerk of appellate courts, testified regarding relevant practices of the clerk's office and the online docket search feature on the judicial branch website, which permits members of the public to view a list of documents filed in any criminal appeal. The district court also admitted into evidence two photos showing the hole in the basement floor where Wilson hid from police and the blue plastic storage bin he held over his head. Testimony established the State never conducted a forensic examination on the original document retrieved from the clerk's office.[2]

Before deliberations began, the judge did *not* instruct the jury regarding permissible inferences it could draw from flight evidence, but the judge did instruct the jury on aiding and abetting. The jury returned a guilty verdict on both charges.

Wilson filed a motion for new trial, arguing the district court erred in denying the motion in limine and the verdicts were contrary to the weight of the evidence. In support of the motion, Wilson submitted

---

[2]Detective Schafnitz testified she sent the document to the division of criminal investigation laboratory (DCI) and requested a forensic document examination after she collected the document from the clerk's office on August 24, 2011. However, she had to retrieve the document from the DCI before it completed its examination because she received notice of the December 2011 trial date. Detective Schafnitz testified she received other notices regarding the trial date when the district court rescheduled the trial on subsequent occasions.

affidavits by two jurors stating every juror who expressed an opinion agreed that the testimony establishing he ran from police and hid in the hole to avoid apprehension by law enforcement was the most compelling evidence of his guilt. The affidavits also stated the attesting jurors would have found Wilson not guilty but for the evidence establishing he evaded law enforcement. The State resisted the motion for new trial, arguing the evidence of Wilson's efforts to avoid apprehension was properly admitted and not unduly prejudicial. The State also argued the verdicts were not contrary to the weight of the evidence. The court denied the motion for the reasons set forth in the State's resistance, concluding there were no factual or legal grounds on which to grant the motion for new trial.

Wilson appealed, contending the district court abused its discretion in admitting the flight evidence and applied the incorrect standard in reviewing his motion for new trial. He also argued his trial counsel was constitutionally ineffective for failing to object to a statement the prosecutor made during closing arguments and failing to request a ruling on his request for a forensic handwriting expert.

We transferred the case to the court of appeals. The court of appeals first found the district court did not abuse its discretion in denying the motion in limine, noting that Iowa courts have long held evidence of flight or concealment to be admissible evidence of consciousness of guilt. Second, the court of appeals found the district court did not abuse its discretion in denying the motion for new trial, having found no reason to conclude it considered an improper standard in ruling on the motion. Third, the court of appeals declined to address the merits of the ineffective-assistance-of-counsel claims, indicating Wilson could bring them in a future postconviction relief action.

Wilson requested further review of the district court rulings on the motion in limine and motion for new trial. We granted further review.

## II. Issues.

"On further review, we have the discretion to review all or some of the issues raised on appeal or in the application for further review." *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). In exercising our discretion, we address only the admissibility of the flight and concealment evidence. We let the court of appeals decision stand as the final decision of this court as to the district court's denial of the motion for new trial and Wilson's ineffective-assistance-of-counsel claims.

## III. Preliminary Matter.

At oral argument, Wilson's attorney acknowledged Iowa Rule of Evidence 5.606(*b*) prohibits this court from considering the affidavits addressing statements made during the course of the jury's deliberations and the effect particular evidence had upon the minds of particular jurors. Therefore, in this appeal we will not consider the affidavits.

## IV. Scope of Review.

We review evidentiary rulings for an abuse of discretion. *State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015). An abuse of discretion occurs when a district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *State v. Brown*, 856 N.W.2d 685, 688 (Iowa 2014). When the district court exercises its discretion based on an erroneous application of the law, it exercises its discretion on grounds clearly untenable. *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014).

**V. Whether the District Court Abused Its Discretion in Denying the Motion in Limine and Admitting the Flight and Concealment Evidence.**

The State argues Iowa Rule of Evidence 5.404(*b*) is not applicable to our analysis. We disagree. This appeal requires us to determine the admissibility of evidence of acts Wilson committed when officers attempted to arrest him, not acts he committed at the time the crimes for which he was charged were committed. Thus, it concerns the admissibility of evidence of acts extrinsic to the crimes charged. *See State v. Nelson*, 791 N.W.2d 414, 420 (Iowa 2010) (distinguishing between acts inextricably intertwined with the crime charged and acts extrinsic to the crime charged). Accordingly, we must analyze the admissibility of the evidence of Wilson's attempted flight and concealment under Iowa Rule of Evidence 5.404(*b*). *See id.*; *see also United States v. Sims*, 617 F.2d 1371, 1378 (9th Cir. 1980) (applying federal rule of evidence 404(b) to evidence of flight extrinsic to the crime charged); 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.12[3], .20[2][b], at 404-37 to -38, -45 (Mark S. Brodin ed., 2d ed. 2015) (stating federal rule of evidence 404(b) governs the admissibility only of acts extrinsic to the crime charged).

**A.  General Principles Regarding Iowa Rule of Evidence 5.404(*b*).** Wilson contends the district court abused its discretion in admitting the evidence of his flight from police and his concealing himself in the hole in his basement. Iowa Rule of Evidence 5.404(*b*) governs the admissibility of evidence of other crimes, wrongs, and acts. It provides that such evidence "is not admissible to prove the character of a person in order to show that the person acted in conformity therewith" but may "be admissible for other purposes." Iowa R. Evid. 5.404(*b*). Thus, evidence of other crimes, wrongs, or acts is not admissible to prove the

defendant has a criminal disposition and therefore was more likely to act in conformity with that disposition by committing the crime in question. *Nelson*, 791 N.W.2d at 425. Rule 5.404(*b*) operates as a rule of exclusion. *Id.* This does not mean courts must exclude all evidence of other crimes, wrongs, or acts. Rather, such evidence "is admissible if it is probative of some fact or element in issue other than the defendant's general criminal disposition." *Id.*

For a court to admit evidence of other wrongful acts in a criminal trial, the prosecutor must articulate a noncharacter theory of relevance. *Id.* The court then must determine whether the evidence is relevant to a legitimate issue in dispute other than the defendant's general propensity to commit wrongful acts. *Id.*; *State v. Shanahan*, 712 N.W.2d 121, 136–37 (Iowa 2006). "If the court determines the evidence is relevant to a legitimate issue in dispute, the court must determine whether the probative value of the other crimes, wrongs, or acts evidence is substantially outweighed by the danger of unfair prejudice to the defendant." *Nelson*, 791 N.W.2d at 425.

It is well-settled law that the act of avoiding law enforcement after a crime has been committed may constitute circumstantial evidence of consciousness of guilt that is probative of guilt itself. *See, e.g., State v. Wimbush*, 260 Iowa 1262, 1268, 150 N.W.2d 653, 656 (1967); *State v. Hetland*, 141 Iowa 524, 527, 119 N.W. 961, 962 (1909).[3] However, we

---

[3]Our analysis concerning "flight evidence" applies not only to evidence showing flight from law enforcement, but also to evidence showing a defendant attempted to avoid law enforcement by other means. *See, e.g., State v. Mitchell*, 450 N.W.2d 828, 830, 832 (Iowa 1990) (considering a suicide attempt in the back of a police car); *Wimbush*, 260 Iowa at 1268, 150 N.W.2d at 656 (listing acts that may constitute circumstantial evidence of consciousness of guilt); *see also* 2 *McCormick on Evidence* § 263, at 311–12 (7th ed. 2013) (listing acts that may constitute circumstantial evidence of consciousness of guilt, including "flight from the scene, from one's usual haunts, or from the jurisdiction after the crime; assuming a false name; changing appearance;

have long recognized courts must treat such evidence with caution. *State v. Bone*, 429 N.W.2d 123, 126–27 (Iowa 1988) (requiring flight instructions to acknowledge "there may be reasons for the flight (or concealment) which are fully consistent with innocence" and acknowledging the "potential unreliability of flight evidence"); *State v. Marsh*, 392 N.W.2d 132, 134 & n.1 (Iowa 1986) (concluding flight instructions are "rarely advisable" and acknowledging some courts have concluded "flight evidence has only marginal probative value"); *State v. Poe*, 123 Iowa 118, 129–30, 98 N.W. 587, 591–92 (1904) (concluding flight instructions may not describe flight as "presumptive evidence of guilt"). Likewise, the United States Supreme Court has "consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime." *Wong Sun v. United States*, 371 U.S. 471, 483 n.10, 83 S. Ct. 407, 415 n.10, 9 L. Ed. 2d 441, 452 n.10 (1963).

Most federal courts and many state courts now recognize the probative value of flight as circumstantial evidence of guilt depends on the degree of confidence with which the finder of fact may draw a chain of four inferences.[4]  2 *McCormick on Evidence* § 263, at 314 (7th ed.

---

resisting arrest; attempting to bribe arresting officers; forfeiture of bond by failure to appear or departure from the trial while it is proceeding; escapes or attempted escapes from confinement; and suicide attempts by the accused").

[4]The observation that the probative value of flight evidence depends on four inferences was famously articulated by the United States Court of Appeals for the Fifth Circuit in *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977). The majority of the federal circuit courts of appeals now acknowledge the probative value of flight depends on the chain of inferences articulated in *Myers*. *United States v. Russell*, 662 F.3d 831, 850 (7th Cir. 2011); *United States v. Wilson*, 385 F. App'x 497, 501 (6th Cir. 2010); *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005); *United States v. Wright*, 392 F.3d 1269, 1278 (11th Cir. 2004); *United States v. Witherspoon*, No. 94–5678, 1995 WL 434826, at \*2–3 (4th Cir. July 25, 1995); *United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir. 1991); *United States v. Silverman*, 861 F.2d 571, 581 (9th Cir. 1988). No other federal circuit has disagreed. Likewise, several state supreme courts

2013). For evidence the defendant sought to avoid apprehension to be probative of his or her actual guilt with respect to the crime charged, the evidence must support a chain of inferences (1) from the defendant's behavior to avoidance of apprehension, (2) from avoidance of apprehension to consciousness of guilt, (3) from consciousness of guilt to consciousness of guilt concerning the crime charged, and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. *See, e.g., United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir. 1991).

Similarly, a few courts state the requirement that evidence of flight must support a chain of inferences from the defendant's conduct to actual guilt for the charged crime a little differently, requiring demonstration of some "nexus" between the specific act of avoidance the state seeks to admit and the charged crime as a prerequisite to admissibility. *See Escobar v. State*, 699 So. 2d 988, 995 (Fla. 1997) (concluding admissibility requires "evidence which indicates a nexus between the flight, concealment, or resistance to lawful arrest and the crime(s) for which the defendant is being tried in that specific case"), *abrogated on other grounds by Connor v. State*, 803 S.2d 598 (Fla. 2001); *State v. Pagan*, 631 S.E.2d 262, 266 (S.C. 2006) (noting such evidence "is relevant when there is a nexus between the flight and offense charged"

---

assess the admissibility of flight evidence by examining the degree of confidence with which the chain of inferences articulated in *Myers* may be drawn. *See, e.g., Ex parte Jones*, 541 So. 2d 1052, 1056 (Ala. 1989); *State v. Kelly*, 770 A.2d 908, 932 (Conn. 2001); *Decker v. State*, 971 A.2d 268, 275 (Md. 2009); *State v. Cooke*, 479 A.2d 727, 732–33 (R.I. 1984).

Additionally, trial courts in some states must determine there is evidence supporting the four inferences in the record before delivering flight instructions to a jury. *See, e.g., State v. Frazier*, 622 N.W.2d 246, 259 (S.D. 2001). At least one jurisdiction requires trial courts to instruct the jury on the four inferences when giving flight instructions. *See State v. Perry*, 725 A.2d 264, 267 (R.I. 1999).

and its admissibility turns on "whether the totality of the evidence creates an inference that the defendant had knowledge that he was being sought by the authorities"); *Ricks v. Commonwealth*, 573 S.E.2d 266, 268 (Va. Ct. App. 2002) (concluding admissibility requires a "nexus . . . between the flight and the alleged offense" such that the defendant "had some knowledge that he might be a suspect").[5]

In other words, the probative value of evidence showing a defendant avoided apprehension turns on the circumstances under which the avoidance occurred. *See Bone*, 429 N.W.2d at 126; *cf. State v. Kreps*, 650 N.W.2d 636, 644 (Iowa 2002) (discussing circumstances under which flight may constitute grounds for reasonable suspicion). For any valid inference of guilt to be drawn by the jury from flight evidence, the district court must assure itself there is some evidence in the record to support the inferential chain between the defendant's act of avoidance and consciousness of guilt for the crime charged.

Consequently, before a court may admit evidence of prior acts of flight or avoidance, the court must assure itself there is adequate evidence to reasonably support the inferential chain between each act sought to be admitted and actual guilt for the crime charged. *See, e.g.*,

---

[5]Other states require similar proof before a flight instruction may be given. *See, e.g.*, *People v. Larson*, 572 P.2d 815, 817–18 (Colo. 1977) (en banc) (concluding a flight instruction is not error when the "defendant had reason to believe that he had committed a crime, that his identity was known, that his pursuit and apprehension would probably ensue, and that he fled or concealed himself for any length of time to frustrate this apprehension"); *State v. Wrenn*, 584 P.2d 1231, 1234 (Idaho 1978) (requiring "other circumstances present and unexplained which, together with the departure, reasonably justify an inference that it was done with a consciousness of guilt and in an effort to avoid apprehension or prosecution based on that guilt" before a flight instruction may be given). We adopted this approach to flight instructions in *Bone*. 429 N.W.2d at 126–27 ("Unless some evidence exists at the time of flight regarding an accusation of the specific crime charged, and the defendant's flight is shown to be prompted by an awareness of that accusation and an effort to avoid apprehension or prosecution, it will be error to give a flight instruction.").

*United States v. Peltier*, 585 F.2d 314, 323 (8th Cir. 1978) ("The validity of drawing these inferences in turn depends upon the number of evidentiary manifestations suggesting defendant's decision to flee was prompted by considerations related to the crime in question."). An act of flight has only marginal probative value as circumstantial evidence of guilt unless the act itself and the surrounding circumstances "reasonably justify an inference that it was done with a consciousness of guilt and in an effort to avoid apprehension or prosecution based on that guilt." *Bone*, 429 N.W.2d at 125 (quoting *State v. Wrenn*, 584 P.2d 1231, 1234 (Idaho 1978)). For an extrinsic act of flight to be admissible, the facts and circumstances must be sufficient to support an inference of consciousness of guilt for the *crime charged.*

The chronology of events constitutes a material consideration in assessing the inferential value of flight evidence. *United States v. Russell*, 662 F.3d 831, 851 (7th Cir. 2011). The inference that flight was motivated by the defendant's desire to avoid prosecution for the crime charged is strongest when the defendant flees in its immediate aftermath or shortly after being accused thereof. *Id.* The more remote in time the alleged flight becomes from the commission or accusation of the charged crime, "the greater the likelihood that it resulted from something other than feelings of guilt concerning that offense." *United States v. Myers*, 550 F.2d 1036, 1051 (5th Cir. 1977).

Innocent people sometimes avoid being apprehended for crimes they did not commit

> not necessarily because they fear that the jury will not protect them, but because they do not wish their names to appear in connection with criminal acts, are humiliated at being obliged to incur the popular odium of an arrest and trial, or because they do not wish to be put to the annoyance or expense of defending themselves.

*Alberty v. United States*, 162 U.S. 499, 511, 16 S. Ct. 864, 868, 40 L. Ed. 1051, 1056 (1896); *see also Wong Sun*, 371 U.S. at 483 n.10, 83 S. Ct. at 415 n.10, 9 L. Ed. 2d at 452 n.10. Consequently, the inferential chain connecting an act of flight to guilt for the crime charged can reasonably be drawn only when the timing of the act suggests "the sudden onset or the sudden *increase* of fear in the defendant's mind that he or she will face apprehension for, accusation of, or conviction of the crime charged." *United States v. Dillon*, 870 F.2d 1125, 1128 (6th Cir. 1989); *see United States v. Akers*, 215 F.3d 1089, 1102–03 (10th Cir. 2000). Evidence establishing the immediacy of flight relevant to other significant events in the case ordinarily constitutes the best available evidence from which to infer consciousness of guilt for the particular crime charged.

> The immediacy requirement is important. It is the instinctive or impulsive character of the defendant's behavior, like flinching, that indicates fear of apprehension and gives evidence of flight such trustworthiness as it possesses. The more remote in time the alleged flight is from the commission or accusation of an offense, the greater the likelihood that it resulted from something other than feelings of guilt concerning that offense.

*Myers*, 550 F.2d at 1051 (citation omitted).

However, establishing immediacy is less critical to establishing the probative value of flight when the evidence conclusively establishes the defendant knew he or she was suspected of the charged crime at the time of flight. *See, e.g., United States v. Jackson*, 572 F.2d 636, 641 (7th Cir. 1978) (acknowledging "the importance of the immediacy factor would be greatly diminished, if not rendered irrelevant, when there is evidence that the defendant knows that he is accused of and sought for the commission of the crime charged"). This conclusion squares with our prior holding that instructing a jury on flight does not constitute error when the evidence suggests the defendant knew he or she had been

accused of the charged crime and sought to avoid apprehension or prosecution for that specific crime. *See Bone*, 429 N.W.2d at 125–27.

The bottom line is that for evidence of flight to have probative value, the critical question is not whether the state had formally accused the defendant of the charged crime, but whether the evidence permits a reasonable inference the defendant acted out of fear of apprehension for the charged crime.[6]

Of course, even when the evidence suggests consciousness of guilt relating to the crime charged, it does not inevitably constitute evidence of actual guilt concerning every element of the charged offense. 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:4 (4th ed. 2013) ("[S]ometimes evidence of a guilty mind relating to the charged offense does not tend to prove particular points essential to guilt."). Nonetheless, in such cases flight may retain some probative value in that it supports the inference the defendant performed the criminal act itself. *See United States v. Kang*, 934 F.2d 621, 628 (5th Cir. 1991) (noting the probative value of flight is relative and depends on the

---

[6]In drawing this conclusion, we leave undisturbed our prior holding that flight instructions may not be given unless the defendant had knowledge relating to an accusation of the specific charged crime. *See Bone*, 429 N.W.2d at 126–27. Our disapproval of flight instructions in *Bone* was premised in part on the dangers associated with a court commenting upon or drawing attention to specific evidence presented during trial. *Id.* at 125. Other courts are in accord with our conclusion that evidence establishing the defendant's actual knowledge that he or she had been formally accused of or charged with the specific crime at issue does not constitute a prerequisite to admissibility. *See, e.g.*, *Dillon*, 870 F.2d at 1128 (6th Cir. 1989) (rejecting the argument that evidence of flight may be admitted "only when that flight occurs after the defendant learns of the charges against him or her"); *State v. Nemeth*, 438 A.2d 120, 123 (Conn. 1980) ("Proof that a suspect had actual knowledge that he was being charged with a criminal offense is not required for the admission of evidence of his flight."); *State v. Walker*, 595 P.2d 1098, 1102 (Kan. 1979) ("Actual knowledge by a defendant that he is being sought for the crime in question is not a prerequisite to the admission of evidence of flight as tending to show consciousness of guilt but merely goes to the weight to be given such evidence.").

elements of the offense established by other evidence, stipulation, or inference); *United States v. Owens*, 460 F.2d 467, 470 (5th Cir. 1972) (rejecting the notion that flight evidence could "reasonably be used to prove any or all elements" of the charged offense yet acknowledging the probative value of such evidence).

Once a district court admits such evidence, it is for the jury to decide whether to credit the inferential chain leading from a particular act of the defendant to guilt for the crime charged. *See, e.g., Wimbush*, 260 Iowa at 1267–68, 150 N.W.2d at 656. The fact that the jury has the ultimate say as to what, if anything, evidence of flight establishes does not diminish the responsibility of the district court to preliminarily determine whether evidence of a prior act is relevant before admitting it into evidence and allowing the jury to consider it.

Determining that flight constitutes evidence of consciousness of guilt is only the first step in determining its admissibility under rule 5.404(*b*). *See Nelson*, 791 N.W.2d at 425; *Shanahan*, 712 N.W.2d at 136–37. Next, the district court must consider whether the probative value of the flight evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *See Nelson*, 791 N.W.2d at 425; *Shanahan*, 712 N.W.2d at 137. Unfair prejudice arises when the evidence "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or . . . may cause a jury to base its decision on something other than the established propositions in the case." *Shanahan*, 712 N.W.2d at 137 (quoting *State v. Plaster*, 424 N.W.2d 226, 231 (Iowa 1988)). In determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, courts should consider

the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.

*Nelson*, 791 N.W.2d at 425 (quoting *State v. Taylor*, 689 N.W.2d 116, 124 (Iowa 2004)). When the probative value of evidence of a defendant's prior act is substantially outweighed by the danger of unfair prejudice to the defendant, the court must exclude it. *State v. Elliott*, 806 N.W.2d 660, 675 (Iowa 2011); *Nelson*, 791 N.W.2d at 425; *State v. Mitchell*, 633 N.W.2d 295, 298–99 (Iowa 2001).

**B. Application of Rule 5.404(*b*) to Wilson's Objections.** Wilson moved before the district court to exclude all references to his eluding law enforcement on August 11 and all references to his hiding in a hole in his basement on September 20. Of course, in analyzing the admissibility of evidence regarding distinct prior acts, a court must separately consider the probative value of each act in light of the other evidence adduced at trial. *See* Iowa Rs. Evid. 5.402, 5.404(*b*).

1. *Application to Wilson's flight on August 11.* To facilitate our evaluation of the relevance of each act Wilson sought to exclude, we will briefly review the timeline leading up to those acts.

On July 27, 2011, the clerk's office received the document purporting to bear Audlehelm's signature. The certificate of service indicated a copy of the document was mailed to the criminal appeals division of the attorney general's office, but the director of that division testified it was never received. On August 2, Wilson filed a second motion for appointment of new counsel in which he acknowledged the document purportedly filed by Audlehelm on July 27. On August 4, this court issued an order in which it acknowledged the same document. The

clerk mailed copies of this order to Wilson and Audleheim. On August 8, Audlehelm received the copy of the order the clerk mailed to him and learned that someone filed the document purporting to bear his signature. Thereafter, he notified the clerk's office, the police department, and the county attorney's office. On August 10, he filed a motion in which he requested this court to review the document. On August 11, Wilson fled from law enforcement when Detective Schafnitz and her fellow officers arrived at his home to serve the search and arrest warrants.

Several significant events related to the charged crimes took place in the days immediately leading up to the flight from which a jury could reasonably infer that Wilson fled from law enforcement due to his consciousness of guilt for those crimes. Although these events by no means conclusively establish Wilson knew law enforcement sought him in connection with the charged crimes, the record was sufficient to support the reasonable inference that Wilson would have experienced a sudden increase in fear that he would be accused of the charged crimes had he in fact filed the forged document with this court. *See Dillon*, 870 F.2d at 1128. The fact Audlehelm received a copy of the August 4 order by mail on August 8 strongly supports the inference that Wilson received a copy of the order before he fled from police on August 11. This fact would have put Wilson on notice that Audlehelm would soon discover the forgery, as the clerk mailed him a copy of the order. Additionally, the online docket search feature of the judicial branch website could have alerted Wilson that Audlehelm had filed a motion seeking review of the forged document. This fact also supports the inference Wilson knew law enforcement was investigating the forgery.

Furthermore, Wilson's conduct included driving in reverse down the street and around a corner, driving over the curb onto a lawn, driving at high speeds while a marked police car chased him, and fleeing on foot after getting into an accident that disabled his vehicle. Though Detective Schafnitz and the other officers wore plain clothes and approached Wilson in an unmarked car, Detective Schafnitz wore her badge on her belt as she approached Wilson's truck, and Wilson continued to flee once the marked car joined the chase. Wilson offered no alternate explanation for his bizarre and evasive conduct.[7] Nor do his past crimes offer any plausible explanation, as he was out on bond awaiting his appeal on the underlying theft convictions on the day he fled from Detective Schafnitz and her fellow officers. Finally, although Wilson committed the separate crime of eluding law enforcement during his flight, *see* Iowa Code § 321.279, he did not make the decision to flee after being caught in the act of committing a crime other than the crimes charged.

We conclude there was ample evidence in the record to support the inferential chain from Wilson's flight from law enforcement on August 11 to his consciousness of guilt for the charged crimes. From the evidence presented, a jury could reasonably infer Wilson desired to avoid apprehension by law enforcement for the charged crimes. Thus, the testimony concerning Wilson's flight from law enforcement met the first prerequisite to admissibility.

The prosecution needed to show only that Wilson aided or abetted the commission of the forgery and falsification of a public document. It did not need to show Wilson actually created or filed the document

---

[7]When a defendant offers an alternate explanation for his or her evasive conduct, it is up to the jury to decide whether to credit it. *See, e.g.*, *State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999) (noting credibility determinations are for the jury).

bearing the forged signature. The flight from law enforcement constituted circumstantial evidence Wilson knew someone had filed the document and someone had forged the signature thereon.

Turning to the question of prejudice, because the State was unable to conduct forensic testing on the forged document, the evidence of flight was important to the prosecution's case in light of the limited evidence available to it. Detective Schafnitz testified that she personally observed Wilson in the act of fleeing, and her testimony was not presented in an inflammatory manner, as it was brief relative to the length of the trial as a whole. *See Peltier*, 585 F.2d at 324. In addition, she testified to only the bare facts concerning the chase and the ensuing accident, omitting details that might have provoked the jury's instinct to punish Wilson. Thus, because the danger of unfair prejudice to Wilson did not substantially outweigh the probative value of the testimony concerning his flight from law enforcement, we find this evidence met the second prerequisite to admissibility.

Because we find the evidence concerning the circumstances existing when Wilson fled from law enforcement supported the reasonable inference that he fled to avoid apprehension for the crimes charged and the danger of unfair prejudice to Wilson did not substantially outweigh the probative value of the flight evidence, we conclude the district court did not abuse its discretion in admitting the testimony describing Wilson's flight from law enforcement on August 11.[8]

2. *Application to Wilson hiding on September 20.* We next consider the admissibility of the evidence detailing the events of September 20,

---

[8]The State also argues the flight evidence was admissible to show Wilson sought to delay his incarceration for the prior theft convictions. We need not reach this issue in connection with Wilson's flight on August 11.

when law enforcement discovered Wilson hiding under a plastic storage bin in a hole in his basement. Officer Moody's testimony was sufficient to support the reasonable inference that Wilson concealed himself to avoid law enforcement, as it established that officers verbally identified themselves well before the canine located him in the hole in his basement floor. But the evidence as a whole seriously undermines our confidence that Wilson's act of concealment was motivated by his consciousness of guilt concerning the forgery and falsification charges, indicative of his actual guilt of those crimes, or intended to delay his incarceration for the prior theft convictions.

The prosecution offered no evidence that events related to the forgery and falsification charges occurred in the weeks leading up to September 20 that might have caused Wilson to fear he would face apprehension for, accusation of, or conviction of those specific crimes or cause him to believe evading arrest would delay his incarceration for the prior theft convictions. *See Dillon*, 870 F.2d at 1128. On August 23, Wilson resisted Audlehelm's motion for review of the order granting the motion for appointment of new counsel. However, no witness testified that Wilson resisted the motion for review of the order, nor was a copy of the motion produced at trial. Additionally, Detective Schafnitz's testimony established Wilson knew three officers had witnessed him engaging in the separate criminal act of eluding law enforcement on August 11.

Under these circumstances, we cannot say the evidence establishing Wilson hid from law enforcement lacked any relevance whatsoever, but we conclude its probative value as circumstantial evidence that he forged or falsified the document filed with this court was marginal at best. Consequently, the danger of unfair prejudice arising

from its introduction substantially outweighed its minimal probative value. Therefore, we conclude the district court abused its discretion in admitting both the testimony establishing officers found Wilson hiding in a hole in his basement on September 20 and the photographs depicting the hole and the blue plastic storage bin Wilson held over his head.[9]

**C. Harmless Error.** When a district court improperly admits flight evidence, its admission does not necessarily require reversal. *See State v. Sullivan,* 679 N.W.2d 19, 29 (Iowa 2004). Under Iowa Rule of Evidence 5.103, we may not find error on any ruling admitting evidence unless the ruling affected "a substantial right of the party" opposing admission. For nonconstitutional errors, we begin our analysis by presuming the substantial rights of the defendant have been prejudiced. *Dudley,* 856 N.W.2d at 678.

One way to show erroneously admitted evidence did not impact a verdict is to show it was merely cumulative. *State v. Elliott,* 806 N.W.2d 660, 669 (Iowa 2011). Here, with respect to its probative value on the question of whether Wilson demonstrated consciousness of guilt for the charged crimes, the improperly admitted concealment evidence constituted cumulative evidence. At best, the concealment evidence tended to prove precisely the same point the properly admitted flight evidence tended to prove—that Wilson committed a criminal act connected to the forged document. *See Westergard v. Des Moines Ry.,* 243 Iowa 495, 500, 52 N.W.2d 39, 42 (1952) (acknowledging cumulative evidence is "evidence of the same kind and to the same point as that previously introduced"). In short, we are certain the jury verdict would

---

[9]We do not decide whether this evidence would be admissible in Wilson's trial on the charge of eluding law enforcement. *See* Iowa Code § 321.279(3).

have been the same without the improperly admitted evidence. A retrial would be futile. Accordingly, we find the district court's improper admission of the evidence relating to the September 20 incident was harmless error.

**VI. Disposition.**

We find the district court properly admitted the evidence of Wilson's flight from law enforcement on August 11, 2011. Although we find the court erred in admitting evidence that Wilson hid from law enforcement on September 20, 2011, we find the error was harmless. The court of appeals opinion stands as the final decision of this court as to Wilson's motion for new trial and ineffective-assistance-of-counsel claims. Therefore, we affirm in part and vacate in part the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Waterman, J., who concurs specially.

**WATERMAN**, **Justice (concurring specially).**

I join the majority opinion except for division V(B)(2). I respectfully disagree with the majority's conclusion that the district court abused its discretion by allowing the arresting officers' testimony that Wilson hid in a hole in his basement to evade detection when they knocked on his door and announced their presence on September 20, 2011. The majority correctly holds the district court properly allowed testimony that Wilson fled from police on August 11. The evidence of his concealment on September 20 is admissible for the same reasons—to show Wilson's consciousness of guilt and motive and intent to remain free pending his appeal. As the majority acknowledges, "At best, the concealment evidence tended to prove precisely the same point the properly admitted flight evidence tended to prove—that Wilson committed a criminal act connected to the forged document." The majority is splitting hairs to find the evidence of flight admissible but not the evidence of concealment.

I would affirm the decision of the court of appeals, which held the district court properly allowed evidence of Wilson's efforts to evade arrest on *both* dates. As the court of appeals concluded:

> Wilson argues the sensational facts of his flight from police *and his subsequent discovery* overwhelm the evidence of the crimes with which he is charged. However, the district court could have concluded the evidence was probative of the State's theory of the case, which was that Wilson was highly motivated to delay his appeal and prolong his freedom, and committed forgery to do so. The evidence of his flight supported that theory and weighed in favor of allowing the testimony concerning his flight. We note, too, that the officers' testimony did not sensationalize the defendant's conduct, but explained the chronology of the investigation. We find no abuse of discretion.

(Emphasis added.)

On both August 11 and September 20, Wilson sought to escape capture. The mere passage of time does not render the later incident inadmissible. I agree with the court of appeals' conclusion that "Wilson's hiding from police on September 20 was not so remote in time the district court was required to find that evidence was irrelevant." Wilson knew what he did. That another six weeks went by is irrelevant when he understood why the police came knocking. *See United States v. Russell,* 662 F.3d 831, 851 (7th Cir. 2011) (noting passage of time between crime and flight is less important if not irrelevant "when there is evidence that the defendant knows that he is accused of and sought for the commission of the crime charged." (quoting *United States v. Ajijola,* 584 F.3d 763, 766 (7th Cir. 2009))). True, Wilson was also charged with eluding based on his August 11 flight, but the district court allowed separate trials, and the jury at the forgery trial was not informed of the eluding charge. The majority fails to refute the State's theory of admissibility that on both dates Wilson sought to prolong his freedom by avoiding capture. It matters not that on September 20 Wilson may have believed the police were knocking on his door with an arrest warrant for eluding as well as for forgery. After all, Wilson's concealment on September 20 was part of the same chain of events. He fled from the police on August 11 to avoid arrest for forgery, and he hid from police for the same reason the next time they came for him. Neither Wilson nor the majority offers any other explanation for his conduct on August 11 and September 20. The weight of the evidence of Wilson's flight and concealment was for the jury.

We are reviewing the district court for abuse of discretion. In my view, the district court had discretion to admit or exclude the evidence

that Wilson hid in the hole in his basement on September 20. I agree with the majority that this evidence was cumulative.

Today's decision should not be seen as a retreat from the admissibility of evidence of flight and concealment. The majority acknowledges it is "well-settled law" that such evidence is "probative of guilt." The Kentucky Supreme Court noted the biblical parallel for the evidentiary "inference that the guilty run away but the innocent remain, which echoes more eloquent language from the Bible: 'The wicked flee where no man pursueth; but the righteous are bold as a lion.'" *Rodriquez v. Commonwealth,* 107 S.W.3d 215, 219 (Ky. 2003) (quoting *Proverbs* 28:1). As the United States Court of Appeals for the Eighth Circuit recently reiterated:

> [I]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.

*United States v. Thompson,* 690 F.3d 977, 991 (8th Cir. 2012) (emphasis omitted) (quoting *United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir. 1991)).

For these reasons, I specially concur in today's majority opinion.