# IN THE COURT OF APPEALS OF IOWA

No. 17-1534
Filed April 17, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ABRAHAM PETRO RIKO,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Abraham Riko appeals from judgment and sentence following his convictions for second-degree theft (two counts), assault on a peace officer, and first-degree eluding. **AFFIRMED.**

Karmen Anderson of Anderson & Taylor, P.L.L.C, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Considered by Vogel, C.J., Vaitheswaran, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DANILSON, Senior Judge.**

Abraham Riko appeals from judgment and sentence following his convictions for second-degree theft (two counts), in violation of Iowa Code section 714.1(4) and 714.2(2) (2016); assault on a peace officer, in violation of sections 708.1(2)(a) and 708.3A(4); and first-degree eluding, in violation of section 321.279(3). He alleges there is insufficient evidence to support the charges and trial counsel was ineffective in failing to object to a jury instruction on the elements of eluding that included the phrase "and/or." We affirm.

On appeal, Riko asserts there is insufficient evidence (1) that he was "the driver of the Toyota Camry," (2) that he "knew the vehicle(s) were stolen," and (3) that he "was participating in a felony" as required for first-degree eluding. Only the first of these claims was adequately preserved for our review.[1] *See State v. Williams*, 695N.W.2d 23, 27 (Iowa 2005) ("[W]hen the motion for judgment of acquittal did not make reference to the specific elements of the crime on which the evidence was claimed to be insufficient, it did not preserve the sufficiency of the evidence issue for review.").

*Sufficiency of the evidence of identity.* We review the sufficiency of the evidence for correction of errors at law. *State v. Kelso-Christy*, 911 N.W.2d 663,

---

[1] "A motion for judgment of acquittal is a means for challenging the sufficiency of the evidence to sustain a conviction." *State v. Allen*, 304 N.W.2d 203, 206 (Iowa 1981). To preserve an issue for appellate review, a motion for judgment of acquittal must make direct reference to claimed evidentiary insufficiency. *See State v. Schories*, 827 N.W.2d 659, 664 (Iowa 2013). "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) (citation omitted). "If the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse', the issue has been preserved." *Id.* at 864.

666 (Iowa 2018). "[W]e examine whether, taken in the light most favorable to the State, the finding of guilt is supported by substantial evidence in the record." *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011). "Substantial evidence exists when the evidence 'would convince a rational fact finder the defendant is guilty beyond a reasonable doubt.'" *Kelso-Christy*, 911 N.W.2d at 666 (citation omitted).

Viewing the evidence in the light most favorable to the State, the record shows that on December 22, 2016, Des Moines Police Officer Linda Powers observed two men in a stolen Hyundai Sante Fe in a parking lot at the 700 block of East Fifth Street, Des Moines. She ordered both men out of the vehicle. The passenger, who was wearing a dark jacket and dark jeans, got out of the front passenger side of the vehicle and walked away, was not pursued by Powers, and was not seen again. The person in the driver's side of the Sante Fe exited the car holding a computer, which he threw at the officer, and then ran northbound across the pedestrian bridge over the freeway. This person was wearing dark jeans, a distinctive white belt, red shoes, and a red jacket.[2] Officers gave chase but were unable to apprehend the person.

Minutes later, a retired police officer who was in an unmarked car spotted a Toyota Camry that had been reported stolen. The officer called dispatch and followed the Camry until uniformed officers in marked vehicles could respond. Des Moines Police Officer Eric Morris responded and attempted to stop the Camry near Hickman Road and Sixth Avenue. Instead, the driver of the Camry sped away, at times going more than twenty-five miles an hour over the speed limit; drove

---

[2] Riko did not contest that he was the driver of the Sante Fe.

through stop signs; and drove on the wrong side of the street. When the Camry went into an alleyway just north of the freeway and Sixth Avenue, Officer Morris and another responding officer, Jerald Fisher, attempted to set up a PIT maneuver.[3] Officer Morris struck the back of the Camry, which spun 180 degrees, and was now generally facing both officers' vehicles. Instead of stopping, the Camry crashed through both vehicles and drove away. The chase continued.

The driver of the Camry lost control, and the vehicle left the road near the intersection of Cleveland and Idaho Streets. The driver of the Camry abandoned the vehicle and fled on foot in a northeasterly direction. Officer Kelly Drane was one of the officers chasing the Camry. The audio from her patrol car includes a description of the person running from the Camry as a black male wearing a dark jacket and dark jeans. About one-half block from where the Camry crashed, Riko was found hiding in a garbage can by Officer Alycia Peterson. Officers Fisher and Morris arrived at the scene and identified the man as the driver of the Camry. Riko's fingerprint was found on the computer thrown at Officer Powers. A photo taken of Riko upon his arrest shows he was wearing dark jeans, a distinctive white belt, and red and white shoes.

Riko challenges Officers Fisher's and Morris's identification of him, noting they saw his face for just seconds. Nonetheless, Officers Morris and Fisher positively identified Riko as the driver of the Camry. Riko was found one-half mile

---

[3] A PIT maneuver was described by Officer Morris. He stated, "A PIT maneuver is when a patrol vehicle is used to stop a fleeing vehicle. The—one on the right—one of the front bumpers is put in contact with one of the rear quarter panels of the suspect vehicle, and then the vehicle is basically spun around to stop forward motion of the vehicle." A secondary law enforcement vehicle is used to "box the suspect vehicle in."

from the crashed Camry, hiding in a garbage can. His flight and hiding are factors from which the jury could infer he was the driver. *See State v. Wilson*, 878 N.W.2d 203, 211 (Iowa 2016) ("It is well-settled law that the act of avoiding law enforcement after a crime has been committed may constitute circumstantial evidence of consciousness of guilt that is probative of guilt itself."). We conclude there is substantial evidence from which a reasonable jury could find Riko was the driver of the Camry.

*Ineffective-assistance-of-counsel claims.* In his reply brief, Riko notes the second insufficiency claim was raised in the motion for new trial, and acknowledges the third claim was not made at trial. He asks that if they were not properly preserved, we address the claims under the rubric of ineffective assistance of counsel.[4] Thus, we are presented with three claims of ineffectiveness. Riko asserts counsel was ineffective in (1) failing to challenge the sufficiency of the evidence that "[he] knew the vehicle(s) were stolen," (2) failing to challenge the sufficiency of the evidence that he "was participating in a felony" as required for first-degree eluding, and (3) failing to object to the jury instruction on eluding, which included as the fourth element: "At the time of this offense, the defendant was also engaged in the offense of theft in the second degree and/or assault on a peace officer."

---

[4] The State has moved to strike these arguments because Riko did not ask that they be addressed as ineffectiveness claims until his reply brief. Generally, a claim not raised until a reply brief is not preserved for our review. *See State v. Olsen*, 794 N.W.2d 285, 287 n.1 (Iowa 2011) ("Because Olsen failed to raise this issue in his original brief, the issue is not preserved for our review."). However, given our de novo standard of review and the fact that the State has addressed the merits of the claims, we deny the motion to strike, pass on the question of error preservation, and address the merits of the arguments. *See State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015) (choosing to pass on the preservation issue because the claim was without merit).

We review claims of ineffective assistance of counsel de novo. *See State v. Bearse*, 748 N.W.2d 211, 214 (Iowa 2008). Generally, we preserve ineffectiveness claims for possible postconviction relief. *State v. Soboroff*, 798 N.W.2d 1, 8 (Iowa 2011). However, we have reviewed the record in the case before us and we conclude that the record is sufficient to address the ineffectiveness claims.

To establish the claim of ineffectiveness of trial counsel, Riko must prove his attorney's performance fell below "an objective standard of reasonableness," and "the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). The applicant must overcome a strong presumption of counsel's competence. *Brubaker*, 805 N.W.2d at 171.

Riko's trial attorney performed competently if it would have been meritless to argue specifically in his motion for judgment of acquittal that there was insufficient evidence to prove Riko knew the vehicles were stolen and that he was participating in a felony as required for first-degree eluding. *See id.* (noting "[w]e will not find counsel incompetent for failing to pursue a meritless issue").

Like intent, a defendant's knowledge is not often capable of direct evidence. *Cf. State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992) ("Intent is a state of mind difficult of proof by direct evidence."). But, a person's knowledge may be inferred from the circumstances. *See id.*; *see also State v. Huser*, 894 N.W.2d 472, 491 (Iowa 2017) ("We have stated that a fact finder may infer a defendant's participation from all of the surrounding circumstances of the illegal activity.").

Here, from his flight from both cars and other actions, there was substantial evidence from which the jury could infer Riko knew both vehicles were stolen. *See Wilson*, 878 N.W.2d at 212 n.3 ("Our analysis concerning 'flight evidence' applies not only to evidence showing flight from law enforcement, but also to evidence showing a defendant attempted to avoid law enforcement by other means."). Before fleeing from the Sante Fe, Riko threw a laptop at Officer Powers. He did not stop when officers attempted a traffic stop of the Camry, rather, he led police on high-speed chase, rammed the Camry into the police officers' vehicles to evade being stopped, and when he crashed the vehicle, he ran and hid in a garbage can. *See id.* at 212-13 ("For evidence the defendant sought to avoid apprehension to be probative of his or her actual guilt with respect to the crime charged, the evidence must support a chain of inferences (1) from the defendant's behavior to avoidance of apprehension, (2) from avoidance of apprehension to consciousness of guilt, (3) from consciousness of guilt to consciousness of guilt concerning the crime charged, and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."). A motion for judgment of acquittal would have failed.

Nor do we find any merit to Riko's contention that there is insufficient evidence that he was engaged in a felony at the time he was eluding law enforcement. The State charged Riko with second-degree theft by "exercis[ing] control over stolen property." Consequently, to convict Riko of felony eluding the State had to prove Riko was "participating" in second-degree theft while eluding. In Iowa Code section 702.13, our legislature has defined "participating in a public offense" as the "period commencing with the first act done directly toward the

commission of the offense and for the purpose of committing that offense and terminating when the person has been arrested or has withdrawn from the scene of the intended crime and has eluded pursuers, if there be any." Because Riko was participating in theft by exercising control over the stolen Camry while he led law enforcement on a high-speed chase, there was substantial evidence of the charge. *See State v. Barnes*, No. 16-0629, 2017 WL 3283282, at *6-8 (Iowa Ct. App. Aug. 2, 2017), *further review denied* Dec. 8, 2017. Counsel did not breach a duty by failing to move for judgment of acquittal on this basis.

Finally, Riko contends counsel was ineffective in not objecting to the jury instruction on eluding. Specifically he asserts counsel should have objected to element four: "At the time of this offense, the defendant was also engaged in the offense of theft in the second degree and/or assault on a peace officer with a dangerous weapon." He cites to *Holmes v. Gross*, 93 N.W.2d 714, 722 (1958),[5] where the court noted the use of the expression and/or "was not advisable . . . in instructions" because it is "often so unsatisfactory and misleading." We have found substantial evidence Riko was participating in the offense of theft in the second degree at the time he was eluding officers. Riko himself does not assert a different outcome would have occurred had the instruction been different. Thus, he has failed to prove prejudice resulted, and his ineffectiveness claim fails.

Because substantial evidence supports his convictions and Riko's ineffectiveness claims fail, we affirm.

**AFFIRMED.**

---

[5] Riko misstates the case name as *State v. Gross* but provides an accurate case citation.