# IN THE COURT OF APPEALS OF IOWA

No. 19-1019
Filed February 3, 2021

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**TRAPP LEROY TROTTER JR.,**
       Defendant-Appellant.
_____

Appeal from the Iowa District Court for Worth County, Rustin Davenport, Judge.

Trapp Trotter appeals his convictions of attempted murder and criminal trespass. **AFFIRMED ON CONDITION AND REMANDED WITH DIRECTIONS.**

Martha Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins and Scott D. Brown, Assistant Attorneys General, for appellee.

Considered by Doyle, P.J., and Mullins and Greer, JJ.

**MULLINS, Judge.**

Trapp Trotter appeals his convictions of attempt to commit murder and criminal trespass. He argues the jury pool was not a fair cross-section of the community, he received ineffective assistance of counsel, the district court abused its discretion related to evidentiary issues, and the district court erred in denying his motions for judgment of acquittal and new trial.

I.      **Background Facts and Proceedings**

On June 2, 2018, Trotter was involved in a physical altercation with two other men. All three men were guests of A.H. The altercation began outside the residence of A.H. At that time, D.L. and A.N. were engaged in the altercation with Trotter. A.H. and other guests were able to separate the men. The altercation resumed between A.N. and Trotter inside the residence of A.H. A.N. received emergency medical treatment for stab wounds following the second part of the altercation. Trotter was treated for minor injuries in the days following the altercation. There was also damage to A.N.'s car. Trotter was charged with attempted murder, burglary in the first degree, and criminal mischief in the fourth degree.

Throughout the course of proceedings, Trotter unsuccessfully argued the racial composition of the jury panel was not representative of a fair cross-section of the community. Trotter was convicted following a jury trial of attempted murder and criminal trespass, a lesser-included offense of burglary. The criminal-mischief charge was dismissed. Trotter also asserted unsuccessful motions for judgment of acquittal and new trial. Trotter appeals his convictions.

## II.     Analysis

### A.     Jury Pool

Trotter claims his constitutional right pursuant to both the state and federal constitutions to a jury drawn from a panel composed of a fair cross-section of the community was violated.  His initial written challenge was based on the race report for April 2019, showing no member of the venire self-identified as a person of color.  At hearing, Trotter's counsel noted that one member of the jury panel self-identified as "multirace."  The census data showed that 1.3% of the Bremer County population identified as African-American; none of the seventy-two jurors on the panel were.  Trotter argued that limiting jury selection to people on voter registration and Department of Transportation lists systematically excluded African American people from the jury pool.

Constitutional issues, including "claims of systematic exclusion of a distinctive group from the jury pool in violation of the Sixth Amendment," are reviewed de novo.  *State v. Veal*, 930 N.W.2d 319, 327 (Iowa 2019).  A prima facie violation may be established by showing:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion in the jury-selection process.

*State v. Lilly*, 930 N.W.2d 293, 299 (Iowa 2019) (quoting *State v. Plain*, 898 N.W.2d 801, 822 (Iowa 2017)).  These elements form the *Duren* test.  *Plain*, 898 N.W.2d at 821–22 (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).  Trotter's arguments target the second and third elements listed above.  The jury returned

its verdict on April 19, 2019. In May, our supreme court clarified the analytical process for fair cross-section challenges in *Lilly*, 930 N.W.2d at 299, and *Veal*, 930 N.W.2d at 327.

Proving the second prong of the *Duren* test involves calculating a standard deviation "to determine whether there has been a deviation from randomness that would indicate" whether the distinctive group has been underrepresented. *Lilly*, 930 N.W.2d at 302. The standard deviation should be calculated in consideration of the population actually eligible for jury service, for example, eliminating people under eighteen and those who are incarcerated in the county. *Id.* at 304–05.

The third prong of the *Duren* test requires a claimant to prove the underrepresentation shown mathematically in prong two was caused by the systematic exclusion of the distinctive population from jury service. *Id.* at 306.

> Although the socioeconomic factors that contribute to minority underrepresentation in the jury pool do not systematically exclude distinctive groups, the failure of courts to mitigate the underrepresentation through effective jury system practices is itself a form of systematic exclusion.
>
> Litigants alleging a violation of the fair cross section requirement would still have to demonstrate that the underrepresentation was the result of the court's failure to practice effective jury system management. This would almost always require expert testimony concerning the precise point of the juror summoning and qualification process in which members of distinctive groups were excluded from the jury pool and a plausible explanation of how the operation of the jury system resulted in their exclusion. Mere speculation about the possible causes of underrepresentation will not substitute for a credible showing of evidence supporting those allegations.

*Id.* at 307 (quoting Paula Hannaford-Agor, *Systematic Negligence in Jury Operations: Why the Definition of Systematic Exclusion in Fair Cross Section Claims Must Be Expanded*, 59 Drake L. Rev. 761, 790–91 (2011)). The court

ultimately held that "run-of-the-mill jury management practices such as the updating of address lists, the granting of excuses, and the enforcement of jury summonses can support a systematic exclusion claim where the evidence shows one or more of those practices have produced underrepresentation of a minority group." *Id.* at 308.

The district court found Trotter failed to prove both the second and third prongs of the *Duren* test. The district court relied on statistics and calculations provided mostly by the State to determine that based on "the African-American population in Bremer County, it us not unexpected that you would have a jury panel of approximately 70 or 72 people . . . where you would not have an African-American." The district court noted that Trotter asked for a new venire to be sent expanding the list of resources by adding utility records. The court said it would likely be unable to retrieve the utility records but felt that expansion of the methods used to reach eligible jurors warranted consideration in the future.

The district court did not have the benefit of our supreme court's clarification of the *Duren* test when it decided this case in April 2019. Accordingly, we affirm on condition and remand the matter to the district court for Trotter to develop his arguments that his constitutional right to a jury drawn from a fair cross-section of the community was violated. If the district court finds a violation, it shall grant Trotter a new trial. *See id.*; *Veal*, 930 N.W.2d at 330.

B.     Ineffective Assistance of Counsel

Trotter alleges his trial counsel was ineffective in failing to request a pretrial hearing on immunity, object to jury instructions, and raise a prosecutorial-misconduct argument. Our supreme court allows ineffective-assistance claims

raised on direct appeal to be considered provided that "judgment and sentence [were] entered before July 1, 2019." *State v. Kuhse*, 937 N.W.2d 622, 627 (Iowa 2020) (quoting *State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019)). Trotter's trial in April 2019 was followed by judgment and sentence in June. Accordingly, we may consider the ineffective-assistance claims raised provided the record is adequate. *Id.*

When ineffective-assistance claims are raised on direct appeal, we must examine the record to determine whether it is sufficient to decide the claim. *Id.* at 627. If the record is insufficient, the claim will be preserved for postconviction relief. *Id.* Claims of ineffective assistance of counsel are also reviewed de novo. *Id.* In order to succeed on this claim, Trotter bears the burden to prove "(1) that counsel failed to perform an essential duty and (2) that prejudice resulted." *Id.* at 628. A court will find counsel breached the first prong if a claimant can show counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). As to prejudice, courts consider whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694).

Iowa Code section 704.13 (2018) states, "A person who is justified in using reasonable force against an aggressor in defense of oneself, another person, or property pursuant to section 704.4 is immune from criminal or civil liability for all damages incurred by the aggressor pursuant to the application of reasonable force." Our supreme court recently held that provision does not entitle a criminal

defendant raising a justification defense the right to a pretrial hearing on immunity. *State v. Wilson*, 941 N.W.2d 579, 590–91 (Iowa 2020). Based on *Wilson*, an attempt to secure a pretrial hearing on immunity would have been meritless. *Id.* Counsel is not ineffective for failing to make a meritless claim. *See Lilly*, 930 N.W.2d at 309.

In *Kuhse*, our supreme court discussed whether omission of an element from marshaling instructions can lead to a successful claim of ineffective assistance of counsel. 937 N.W.2d at 629–31. Yet, Trotter does not argue an element was omitted from the marshaling instructions. Instead, he argues use of the justification element, "[Trotter] was not justified," should have included references to the justification instructions. In *Kuhse*, our supreme court addressed a similar situation. *Id.*

> Ineffective assistance of counsel does not necessarily occur when defense counsel fails to object that a marshaling instruction does not refer to a required element of a defense—or cross-reference a defense that the State is required to disprove. Instead, one must examine the record and consider the evidence presented, how the case was tried, and what the jury instructions as a whole said.

*Id.* at 630.

After briefing in this case was fully submitted, our supreme court decided *State v. Davis*, another case involving an ineffective-assistance claim following counsel's failure to challenge to a marshaling instruction allegedly missing a cross reference. 951 N.W.2d 8, 16–17 (Iowa 2020). In *Davis*, the jury received marshaling instructions for first-degree murder and nine lesser included offenses. *Id.* at 17. The marshaling instructions for the lesser-included offenses all contained a reference to the jury instruction for the insanity defense, but no cross-reference

was included with the first-degree murder instruction. *Id.* Our supreme court found there was no tactical reason for failing to object to the first-degree murder instruction and that prejudice resulted because, when read all together, the instructions were misleading. *Id.* at 17–20.

In the case before us, the jury received forty-four instructions, nine instructions included the allegedly insufficient justification language. Instructions twenty-two through thirty-four were the marshaling instructions for the criminal charges and lesser-included offenses. Instructions thirty-five through thirty-nine were the justification instructions. Instruction thirty-five "concluded with the following stand-alone sentence: 'The State must prove [Trotter] was not acting with justification.'" *Accord id.* at 18.

In its closing argument, the State read the elements of attempted murder, including the element that Trotter was not justified. However, the State also told the jury that if it found Trotter guilty of both crimes charged, "that's where you stop. All right? The other offenses are just included within that." The instructions for attempt to commit murder and burglary in the first degree are numbers twenty-two and twenty-five. The State insisted that Trotter "started" and "finished" the altercation and referred to him as the aggressor. Trotter's closing focused on his testimony that he did not throw the first punch and was defending himself throughout the altercation. On rebuttal, the State returned to justification by telling the jury Trotter behaved unreasonably. The State also reminded the jury it bore the burden to prove Trotter was not justified.

A.N. and A.H. testified at trial, and agreed with Trotter that he did not throw the first punch. From there, the stories differed. The jury heard accounts from

A.N. and A.H. that Trotter pursued the other men, contrary to Trotter's own testimony that he repeatedly attempted to retreat. The jury also heard from medical professionals who treated physical injuries of Trotter and A.N., neither of whom suffered life-threatening injuries.

Our review encapsulates both the instructions and trial record. *Kuhse*, 937 N.W.2d at 630–31. Any confusion that may have resulted from the State's argument that the jury should "stop" if it found Trotter guilty was overcome by its statements on rebuttal that focused on justification and the burden of proof on the State. Trotter's own closing focused on his belief he was in fear for his safety and his attempts at retreat. The jury was able to hear from Trotter, A.N., and A.H. and was free to weigh the credibility of each witness. There is, furthermore, no argument the instructions failed to properly instruct the jury of the applicable law. Even though no cross-references to the justification defense are included with the marshaling instructions related to the charged offenses and lesser-included offenses, there is nothing in that omission to mislead the jury by implying the defense only applied to lesser-included offenses. *See Davis*, 951 N.W.2d at 19. Accordingly, we find no prejudice on the issue and will not consider any allegedly related breach of duty. *Kuhse*, 937 N.W.2d at 631.

Trotter alleges his counsel was ineffective in failing to object to prosecutorial misconduct. We first ask whether there was misconduct. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). Next, we examine whether that "misconduct resulted in prejudice to such an extent that [Trotter] was denied a fair trial." *Id.*

> We consider (1) the severity and pervasiveness of the misconduct;
> (2) the significance of the misconduct to the central issues in the
> case; (3) the strength of the State's evidence; (4) the use of

cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct.

*Id.* (citations omitted). If we find there was misconduct that resulted in prejudice to Trotter, "we must then consider whether an attorney performing within the range of normal competency would have made an objection and/or requested a mistrial." *Id.* at 870. If the alleged misconduct is not part of a reasonable trial strategy, we may find the first prong of the ineffective-assistance test is satisfied and counsel has failed to perform an essential duty. *Id.* We will then move to the prejudice prong of the ineffective-assistance test if the record on appeal is sufficient for our review. *Id.* If it is not, we may preserve it for postconviction relief. *Id.*

Trotter argues the prosecutor engaged in misconduct by vouching for the credibility of witnesses during closing arguments. Prosecutors are "entitled to some latitude during closing argument in analyzing the evidence admitted in the trial." *Id.* at 874 (quoting *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975)). Prosecutors "may argue the reasonable inferences and conclusions to be drawn from the evidence," but cannot "express his or her personal beliefs." *Id.* More specifically, prosecutors are

> precluded from using argument to vouch personally as to a defendant's guilt or a witness's credibility. This is true whether the personal belief is purportedly based on knowledge of facts not possessed by the jury, counsel's experience in similar cases, or any ground other than the weight of the evidence in the trial.

*Id.* (quoting *State v. Williams*, 334 N.W.2d 742, 744 (Iowa 1983)).

Our review of the State's closing argument and rebuttal shows the prosecutor did say, even insist, that A.N. and A.H. provided more credible testimony than Trotter. The prosecutor told the jury the testimony of those two

witnesses was "consistent" but acknowledged that certain minimal inconsistencies did exist and were not so problematic to make the testimony non-credible. The prosecutor gave context to the testimony of A.N., who suffered injuries he believed to be life-threatening at the time of the altercation. We find the statements made by the prosecutor during closing arguments were made based on evidence presented to the jury at trial in order to argue that the jury should find other witnesses more credible than Trotter. The prosecutor never implied special knowledge gave him a particular ability to tell the jury who was telling the truth. The prosecutor argued the members of the jury should use their own common sense to reach a guilty verdict. Accordingly, the prosecutor's statements in closing did not rise to the level of prosecutorial misconduct. In the absence of misconduct, the ineffective-assistance claim on that issue must fail. *Id.* at 869–70.

C. Evidentiary Issues

"We review evidentiary rulings for abuse of discretion." *State v. Wilson*, 878 N.W.2d 203, 210 (Iowa 2016). Our review asks whether the "district court exercise[d] its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* An erroneous application of law constitutes clearly untenable grounds. *Id.* "An abuse of discretion will not generally be found unless the party whose rights have been violated suffered prejudice." *State v. Richards*, 809 N.W.2d 80, 89 (Iowa 2012) (quoting *State v. Babers*, 514 N.W.2d 79, 82 (Iowa 1994)).

Trotter objected to testimony and photographic evidence of damage to the windshield of a car that belonged to the knife victim. He argued at trial that the State was attempting to provide evidence of a prior bad act in violation of Iowa

Rule of Evidence 5.404(b). The State presented the evidence to show that a knife they believe caused the damage (1) was not from the home in which part of the altercation took place, (2) explains why the knife broke during the altercation, and (3) demonstrates Trotter's intent to inflict injury with the knife. Trotter argued there was no evidence to tie the windshield damage to Trotter based on the testimony provided at trial. The district court found the evidence sufficient "for the State to make the argument that the damage to the windshield was connected with the knife found at the scene of the altercation." Further, the court found the lack of eyewitness testimony linking Trotter to the damage "goes to the weight of the matter."

On appeal, Trotter argued there is no foundational connection between the windshield damage and the knife. Trotter also argues that if we find error was not preserved on the argument, he received ineffective assistance from his trial counsel on the matter. The State does not contest error preservation. It argues there was no abuse of discretion and that the evidence was relevant.

At trial, the jury heard from Trotter and other witnesses that he was involved in the altercation and wielded the knife. Trotter testified that he found the knife during the altercation, inside A.H.'s apartment. However, A.H. testified he did not leave knives around. Trotter admitted to injuring A.N. with the knife and Trotter alleged that A.N. was his attacker inside A.H.'s apartment. A.N.'s windshield was damaged, allegedly with the same knife. The jury heard from the knife victim and apartment resident that Trotter was the attacker but that neither man noticed damage to the windshield until after the altercation ended. In fact, none of the

testimony from the three men indicates there was any damage done to the windshield area of the car.

In order to gain the immunity protection of Iowa Code section 704.13, which Trotter sought, he would have to be justified in his use of force. Evidence that Trotter may have used the same knife to damage property of the person who suffered the knife wounds prior to wielding it to cause the knife injuries is relevant to help the jury determine whether Trotter was justified in using reasonable force in this case. On our review, we find no abuse of discretion in admitting the evidence of knife damage to the windshield.

D.    Sufficiency and Weight of the Evidence

"Sufficiency of the evidence claims are reviewed for corrections of errors at law." *Lilly*, 930 N.W.2d at 298. The verdict will stand if supported by substantial evidence. *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005). "Evidence is substantial if it would convince a rational fact finder that [Trotter] is guilty beyond a reasonable doubt." *Id.* (quoting *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005)). In reviewing the entire record, including all evidence presented, we view the "evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly be deduced from the record evidence." *Id.* (quoting *Quinn*, 691 N.W.2d at 407).

Trotter challenges the justification element of the charges of attempt to commit murder and criminal trespass. Trotter testified A.N. and D.L. became angry due to Trotter's live internet broadcast and instigated the altercation both verbally and physically. Trotter testified he was beaten by both men before bystanders were able to separate them. Trotter's testimony that he was not the aggressor of

the first part of the altercation was corroborated by the apartment resident. Trotter testified that after he entered the apartment, A.N. entered and resumed the fight. Trotter testified he found the knife in the apartment during the altercation and used it to defend himself before fleeing the scene to hide from the men, who he alleged, were in pursuit of him.

A.N. and A.H. testified Trotter had been drinking and threatened to kill A.N. All three men testified that Trotter did not throw the first punch. A.N. testified his shirt was torn during the first part of the altercation, and he entered an apartment for a replacement. A.N. testified Trotter pursued him into the apartment to resume the fight and he was eventually stabbed. A.N. testified he left the apartment first, and was pursued by Trotter. His testimony about entering the apartment for a new shirt and being attacked by Trotter was corroborated by the testimony of the apartment resident.

Our review of the record shows the evidence regarding the identity of the aggressor for both parts of the altercation is contested. Although Trotter, A.N., and A.H. agreed that Trotter did not throw the first punch, there is testimony that he made verbal threats and allegedly pushed another man prior to the first punch. Furthermore, after the first part of the altercation ended, it resumed in the apartment. There is testimony that Trotter was the aggressor of the second part and Trotter testified he was attacked. Based on our review of the record, we find substantial evidence was presented to the jury from which the jury could find that Trotter was guilty beyond a reasonable doubt of both attempted murder and criminal mischief. *Id.*

"We review a denial of new trial on the ground the verdict is contrary to the weight of the evidence for abuse of discretion." *Veal*, 930 N.W.2d at 328. "A court may grant a new trial where a verdict rendered by a jury is contrary to law or evidence." *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). "Unlike the sufficiency-of-the-evidence analysis, the weight-of-the-evidence analysis is much broader in that it involves questions of credibility and refers to a determination that more credible evidence supports one side than the other." *Id.* Yet, our supreme court "caution[ed] trial courts to exercise this discretion carefully and sparingly when deciding motions for new trial based on the ground that the verdict of conviction is contrary to the weight of the evidence," because "a failure to follow [the admonition] would lessen the role of the jury as the principal trier of the facts and would enable the trial court to disregard at will the jury's verdict." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). "Appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdicts is against the weight of the evidence." *State v. Heard*, 934 N.W.2d 433, 445–46 (Iowa 2019) (quoting *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003)).

The district court made the following statement during its ruling on the motion for new trial:

> Here there is evidence that [Trotter] entered the apartment of [A.H.] without permission, stabbed [A.N.] with the specific intent to cause the death of [A.N]. The Court has considered the arguments set forth in—in [Trotter's] motion for new trial. The Court finds that more credible evidence supports the guilty verdicts than supports any of the alternative verdicts.
> The verdicts in this case are not contrary to the weight of the evidence, and the verdicts are not a miscarriage of justice.

Trotter's testimony differed substantially from the testimony of A.N. and A.H. Yet, we agree with the district court that evidence was presented to support the jury's verdict and no miscarriage of justice has occurred. We find no abuse of discretion in the district court's findings or denial of the motion for new trial.

**III.     Conclusion**

The district court did not have our supreme court's 2019 clarifications of the applicable legal framework for cross-section challenges, so we affirm on condition and remand to the district court for reconsideration of Trotter's jury-pool challenge. Trotter has failed to prove he received ineffective assistance from his trial counsel. We find no abuse of discretion in admission of the evidence regarding the damaged windshield. Finally, we find substantial evidence was presented to find Trotter guilty of attempted murder and criminal trespass and that there was no abuse of discretion in denying the motion for new trial.

**AFFIRMED ON CONDITION AND REMANDED WITH DIRECTIONS.**