# IN THE COURT OF APPEALS OF IOWA

No. 22-1068
Filed October 11, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**SARA JO WEISBECK,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Stuart P. Werling,

Judge.

The defendant appeals her convictions for insurance fraud and identity theft.

**AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Ella M. Newell, Assistant

Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney

General, for appellee.

Considered by Bower, C.J., Tabor, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**BLANE, Senior Judge.**

Sara Weisbeck appeals her convictions for insurance fraud: false material information and identity theft over $1500 and under $10,000, both class "D" felonies. She contends the evidence did not support the verdicts, the court abused its discretion in evidentiary rulings, and the court considered improper factors in its sentencing decision. We find no basis to reverse and affirm the convictions and sentence.

## I. Facts and Prior Proceedings

In spring 2019, Weisbeck was renting a house from Lisa Smith in LeClaire. The house did not come with appliances, so Weisbeck provided her own refrigerator, stove, microwave, washer, and dryer. The night of June 30, there was a severe storm in the area. The following morning, Weisbeck sent Smith this text message:

> Hey you . . . first of all, thank you SO much for the air conditioner!!!
> I don't want to sound sketchy, but the house totally got struck [b]y lightening [sic] last night, and there are trees like splitting down the middle . . . . I don't know if you want to call your insurance and report it as part of the damage or not, but it would be good timing to do so if you did!

That evening, Smith and her son went over to the house. Weisbeck was in the back yard and showed Smith the splitting tree at the back of the large lot. But Smith did not see or smell any scorching. Weisbeck then told Smith that lightning had struck the roof of the house and knocked a window out of its frame. Smith saw a window frame lying on the ground with one pane missing, but no shattered glass was around it. Weisbeck also said, because of the lightning strike, all of her appliances got "fried." Weisbeck would not, however, let Smith into the house to

inspect the damage to the window. She only allowed Smith in several days later. Smith ultimately did not file any claim with State Farm, her property insurer.

On July 2, the day after speaking with Smith, Weisbeck reported to her insurer, Nationwide Insurance, that lightning struck a tree on her lawn, and the electricity traveled into her house, damaging her appliances. She gave a list of the damaged items, which included: a refrigerator, "gas stove/oven," microwave, front-loading washer, dryer, HP Compaq computer, 65" Samsung OLED flatscreen television, 60" Samsung television, PlayStation 3, X Box, Blu-ray/DVD player, and $200 worth of spoiled groceries from the refrigerator. She was also asked for and provided photographs of the items. The claims adjustor reported advising Weisbeck to keep her damaged property for inspection.[1]

At the same time, the claims adjustor referred Weisbeck's claim to Nationwide's Special Investigations Unit for raising several "red flags." She reported that Weisbeck was "evasive" about who her landlord was and would not provide contact details so Nationwide could confirm who owned the property. And although she was told to keep the damaged appliances and electronics, Weisbeck told the claims adjustor she had discarded them. She claimed a prior Nationwide representative had told her she could throw them away. But the claims adjustor reviewed the call logs and did not see any record that a prior representative had

_____

[1] She also sent Weisbeck a letter estimating the total value of her damages ($7,997.06) and giving a number of additional instructions. One was, "Please do not destroy or discard any of the damaged items until we have had an opportunity to inspect the damages and have reached an agreement with you on any supplemental cost." But by then, Weisbeck had already gotten rid of the damaged items.

given those instructions. The claims adjustor also thought the photographs Weisbeck provided were strange in that some showed functioning electronics.

Joe Martinez, a special investigator with Nationwide, took over the case around July 10.[2] He tried calling Weisbeck with no answer. So, on July 12, he went out to the house for a "cold call." Weisbeck answered the door, and Martinez gave her his business card advising her that he needed to inspect the property for her insurance claim. Weisbeck took Martinez to the back yard to look at the tree. She said lightning struck the tree, travelled through the roots into the house, and shorted out all her electronics.

When he asked to inspect the interior of the home, Weisbeck would not let him in. He explained that they needed to inspect the home and conduct an interview to collect additional information on the claim. Weisbeck said she needed to call Nationwide and verify his story. Martinez asked if he could continue taking pictures of the outside of the house, and Weisbeck said that was fine. Martinez photographed the tree and the house exterior, noting that the electrical meter was still functioning and there appeared to be no electrical or fire damage to the house.

At that point, Weisbeck came out again and told Martinez she had just spoken to Martinez's "manager's manager's manager" and was told she did not need to comply with any investigation. She told Martinez to leave.[3] Weisbeck was

---

[2] Weisbeck was also consistently evasive with Martinez about putting him in touch with Smith.

[3] Again Martinez determined through Nationwide's call logs that there was no communication with his managers on that day, although Weisbeck called several days later to complain about him.

deemed to have refused to cooperate with the investigation, and Nationwide ultimately denied her loss claim.

Two weeks after the storm, on July 15, Martinez got in touch with Smith. He showed her several emails between Weisbeck, Smith, and Nationwide representatives regarding Weisbeck's claim. But Smith knew nothing about the emails or the insurance claim being discussed within them. She did not own the email address purporting to be hers, but knew that the handle, "czhomes@realtyagent.com," was the name of the prior property-owners' rental company.[4]

Smith reported the false emails to the LeClaire police. LeClaire police forwarded the complaint to the Iowa Insurance Division Fraud Bureau. The State ultimately charged Weisbeck with two criminal counts: insurance fraud: false material information, in violation of Iowa Code section 507E.3(2)(a) (2022), a class "D" felony; and identity theft over $1500 and under $10,000, in violation of Iowa Code section 715A.8(3)(b), also a class "D" felony. A jury convicted Weisbeck as charged. The court sentenced her to indeterminate terms of five years for each conviction, but suspended the terms and imposed two years of probation. She appeals her convictions and sentence.

---

[4] Smith bought the home from her friends Steven Cassatt and Sherry Zaruba-Cassatt. They had once operated a rental company, and the house was one of their properties. Weisbeck began renting from them in 2016 or 2017. Their company at the time was called "CZ Homes LLC," combining their last initials. Weisbeck continued as Smith's tenant after Smith bought the house.

## II. Analysis

Weisbeck raises sufficiency-of-the-evidence, evidentiary, and sentencing claims.

### A. Sufficiency of the Evidence

Weisbeck contends there was insufficient evidence to support the jury verdicts on identity theft and insurance fraud. She argues the State failed to prove that she was the person who sent the emails from "czhomes@realtyagent.com," that she had the intent to defraud Nationwide, or that she gave Nationwide false information.

"We review sufficiency of the evidence claims for correction of errors at law." *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We consider whether, when taken in the light most favorable to the State, the verdicts are supported by substantial evidence. *Id.* Evidence is substantial if it would convince a rational trier of fact that Weisbeck is guilty beyond a reasonable doubt. *See id.*

### 1. Identity Theft

We start with the claim that the State did not prove Weisbeck authored the email messages, a key element of the identity theft claim.[5]

---

[5] For the jury to find Weisbeck guilty on the one count of identity theft, it had to find:

      1. That between about the 10th day of July, and the 15th day of July, 2019, the defendant obtained identification information of Lisa Smith.

      2. At that time the defendant intended to obtain a benefit by defrauding someone.

      3. The defendant used or attempted to use that identification information to obtain credit, property, services, or other benefit without the authorization of Lisa Smith.

The court also instructed the jury: "'Identification information' means, but is not limited to: a person's name, address, date of birth, telephone number, . . . signature, electronic mail signature, electronic identifier or screen name . . . ."

After his unsuccessful encounter with Weisbeck, Martinez showed Smith the string of emails between Weisbeck, Nationwide, and "Lisa Smith" at the email address "czhomes@realtyagent.com." On July 10, Weisbeck sent this email message to "czhomes@realtyagent.com": "Good afternoon Lisa! So sorry to bother you, but in order for my insurance company to process the claim, they just need verification that I was the owner of the refrigerator and oven/stove. . . . Thank you so much! Sara." Then, "'Lisa Smith' czhomes@realtyagent.com" responded: "Is there someone I need to email before I got to work to verify all of this? Just send me their name and email contact info and I can get it to them before I go to work." Weisbeck sent back:

> [T]he supervisor for the claim said that I could just forward the email I sent to you, if you could just verify that I am the owner of the appliances. I did explain to him that you work second shift and have hard to reach house by phone. I will also indicate that you are available via email if they for some reason need MORE information. Ehhh . . . .
>     Thanks again,
>     Sara

"[C]zhomes@realtyagent.com" responded at 12:43 p.m. with the following statement:

> Dear Nationwide Claims Department,
>     My name is Lisa Smith. I am the owner of the property at 211 [Main Street] in LeClaire, IA. Last Monday, July 1, the home was struck by lightening [sic] and a significant amount of damage occurred. I have filed and already settled my claim with my agent, and I am hoping my tenant will be able to as soon as possible as well.
>     My tenant, Sara Weisbeck, owns all of the appliances in the house. This includes the refrigerator, stove/oven, microwave, washer and dryer. This was a unique incident in which she moved

___

And specific intent was defined as "not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind. . . . You may, but are not required to, conclude a person intends the natural results of her acts."

into a foreclosed home and agreed to provide these items and renovate the home at a discounted monthly rental rate.

She is a very sweet woman and works very hard for the possessions she has, I hope this helps to clarify any questions you have, and can finish processing her claim as quickly as possible, if however you have further questions, I can be reached at this email address until 2:00 this afternoon.

Regards,
Lisa Smith

Weisbeck forwarded this email string along with "Lisa Smith's" statement to the claims adjustor at 1:50 p.m. that day saying, "[T]his email is being forwarded to you . . . from my landlord. . . . My landlord works 2nd shift, and said [if] you had any further questions to facilitate this claim, that you could reach out to her before then at the attached email address."

Weisbeck denied authoring the emails and argues the State did not perform any forensic analysis or establish who did author them. But such testimony is unnecessary because there is ample evidence from which the jury could conclude she authored it. Most significantly, there is no one else it could be because no one else had any motive or reason to communicate with the claims adjustor in this manner. Weisbeck wanted her insurance claim to be paid and, because Nationwide required confirmation from her landlord, Weisbeck had a clear motive for sending the emails. *See State v. Serrato*, 787 N.W.2d 462, 468 (Iowa 2010) (considering motive as part of the substantial evidence supporting the jury's verdict).

In addition, "CZHomes" was the name of her previous landlord's rental company. But the previous landlord testified she did not recognize the domain name, "@realtyagent.com," and had never used that email address. And the state insurance fraud investigator testified that "@realtyagent.com" was a publicly-

available domain name that anyone on the internet could buy. He also testified that the email forwarding the statement from "Lisa Smith" to Nationwide was sent from Weisbeck's own phone.

Other circumstantial evidence would convince a jury that Weisbeck was the writer. The jury heard that Weisbeck had been evasive with Nationwide about who the landlord was and never gave them Smith's contact details, even though they had texted the day after the storm. The forwarded email also made it difficult for Nationwide to contact Smith: it implied that Smith was hard to reach by phone. She stated several times that Smith worked second shift, although Smith testified she didn't. It gave only the email address for her contact details. And it instructed that Nationwide could contact Smith at the email address until 2:00 p.m. that day, but Weisbeck only forwarded the email on to Nationwide at 1:50 p.m. Weisbeck's evasiveness made it harder for Nationwide to confirm the true identity of the property owner, who could confirm Nationwide's suspicions about the photographs and the claim.

In her defense Weisbeck points to other people who were aware of the situation, such as her father or her boyfriend, but not why they would be motivated to send the emails or any evidence that they did. But when reviewing for substantial evidence, "[i]t is not our place 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.'" *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) (citation omitted). "It is also for the jury to decide which evidence to accept or reject." *Id.* The jury was within its purview in rejecting Weisbeck's suggestion that someone else could be the culprit. The evidence could

convince a rational jury beyond a reasonable doubt that Weisbeck was the writer and that she used Smith's name to obtain an insurance payout from Nationwide without Smith's authorization. So substantial evidence supports the jury's verdict on identity theft.

### 2. Insurance Fraud

Next, Weisbeck argues there was insufficient evidence to prove she intended to defraud[6] Nationwide or that she provided materially false information.[7] We agree with the State that there is ample evidence to support both jury findings.

To explain our reasoning, we must go back into the facts and testimony, back to the photographs that raised a red flag for the claims adjustor. Several of the appliances, including the PlayStation and the Samsung Blu-ray player, appear to have functioning lights, suggesting those electronics did not get "fried" as Weisbeck claimed. Another photograph depicts a monitor and printer with functioning blue lights next to the HP computer claimed as damaged. Martinez testified it is unusual that appliances would be damaged all over the house but only certain ones.

---

[6] Defraud means "[t]o cause injury or loss to (a person or organization) by deceit . . . ." *Defraud*, *Black's Law Dictionary* (11th ed. 2019).

[7] To find Weisbeck guilty of insurance fraud, the jury had to find:

1. On or about July 1, 2019, the Defendant presented to an insurer, any written document, oral statement or computer-generated document

2. As part of or in support of a claim for payment or other benefit pursuant to an insurance policy,

3. At the time the defendant knew that such document or statement contained false information concerning a material fact, and

4. At that time the defendant intended to defraud an insurer.

In addition, Weisbeck allowed Smith to enter the home a few days after the events of the storm, and Smith took several pictures of the interior. She testified about what the rental home looked like in the interior.[8] But the photographs Weisbeck submitted to the insurer appear to be from a different home. The cabinets, counters, and backsplash in the kitchen and the walls in the basement are not the same as in the rental house. Weisbeck explained this discrepancy at trial by testifying the large appliances depicted in her photos—refrigerator, stove,[9] washer, and dryer—were originally in her parents' house. When they renovated their home the previous fall, they gave the appliances to Weisbeck. She moved them into her rental house in March 2019 and gave her then-boyfriend her old appliances.[10] She admitted the photos she gave Nationwide were from her parents' house but insisted the appliances were in her home on July 1.

Weisbeck also testified that, on the morning of July 1, she woke up to standing water in her kitchen and hallway. She had to go to work, so she called her dad to come over and take a look. He advised her to make an insurance claim. He also told her he "was concerned that with the water sitting there that the laminate floor would buckle, it would ruin the . . . flooring underneath," and she

---

[8] Smith could not pinpoint whether the photographs the State offered were taken when she entered the house a couple of days after the storm events or from when she retook possession after Weisbeck's eviction.

[9] The stove Weisbeck claimed as a loss was a gas stove and oven. But the rental home was not equipped with a functioning gas line. When asked, Weisbeck claimed Smith's husband said he would investigate installing a gas line. But Smith's husband testified he had never met Weisbeck. Weisbeck also claimed that she kept the nonfunctioning gas stove in her kitchen because it had a clock and she had no other clocks in the house.

[10] Two friends testified in support of Weisbeck. Neither friend could pinpoint when her parents' old appliances were installed in Weisbeck's house.

should remove the appliances from the house immediately. She said she spoke with a Nationwide representative who told her, "Do whatever it takes to mitigate the situation." So, Weisbeck testified, her father disposed of the appliances at the dump and the electronics at a special electronics landfill. Weisbeck said she called the same representative to ask if it was okay to get rid of the items, and he responded, "As long as you take identifying pictures" of the items and the serial numbers. Weisbeck said she was not present for the disposal because she was at work.

On appeal, Weisbeck contends she did not knowingly submit false information concerning a material fact related to her claim. We think a reasonable fact finder could conclude she did. We have already said the jury could reasonably believe she was the author of the emails and submitted the false information that she was Lisa Smith. The jury reasonably believed that Weisbeck invented a fake email address to stand in as her landlord and falsely represent that her claim was valid. Those emails also contain several pieces of false information that Weisbeck would have been aware of. The email stated Smith had filed and settled a claim for property damage, but Smith never filed a claim with her own insurer. The email also stated Smith worked second shift and the house was purchased in foreclosure, both being untrue.

The jury also heard that Weisbeck somewhat changed her version of what happened during the storm. She told Smith over text that lightning hit the house; but told Nationwide and Martinez that lightning struck a tree and traveled into the house. Both Smith and Martinez testified there was no evidence of a lightning strike on either the tree or the house, and the electricity meter at the side of the

house was still functioning normally. Weisbeck also told the claims adjustor that a representative told her she could dispose of the damaged property and Martinez that his "manager's manager's manager" said she did not have to comply with the investigation. But neither of those communications appeared in Nationwide's call records. Nor were they consistent with Nationwide's instructions for processing a loss claim.[11]

As for the alternative explanation that her ex-boyfriend took the original appliances and her father disposed of the damaged ones, the jury was free to believe Weisbeck. But neither her ex-boyfriend nor her father testified to corroborate that version. And Weisbeck never mentioned standing water in her home to either Smith or the Nationwide representatives. There is enough evidence in this record to convince a rationale fact finder that Weisbeck provided multiple pieces of false information to her claim adjustor, to Smith, and to Martinez.[12]

And the evidence is enough to convince the jury that Weisbeck did so with the specific intent to defraud Nationwide. Evidence of Weisbeck's maneuvers to conceal the damaged property from inspection and speed the payment of her claim appears in the record. The false emails and her further communication of false information to the parties were all aimed toward Nationwide approving her claim and giving her a cash payout. It began with a claim that lightning struck her house,

---

[11] The Nationwide representative agreed that under some circumstances property must be disposed of before they can inspect it, but this did not fit those circumstances.

[12] Weisbeck further argues that the State did not establish whether any of her appliances were damaged. Insurance fraud does not require proof that allegedly damaged items were in fact damaged. It is enough that the defendant knowingly made a false statement about the claim.

or in later stories the tree, despite Smith and Martinez failing to observe any evidence of a lightning strike. She also claimed she got rid of the damaged property, blocking any attempt to inspect it or the interior of the house. Further inferences can be drawn from Weisbeck's refusal to allow both Smith and Martinez into her home or otherwise cooperate with the investigation.[13] And reports from Nationwide contradicted Weisbeck's claim that a representative there told her she was free to dispose of the appliances. On appeal, Weisbeck claims she relied heavily on her father's help, was unsure how to proceed with her claim, and "was unaware she was doing anything wrong." The jury was entitled to reject this defense and to disbelieve Weisbeck's story about the shifting appliances, and did so. There is substantial evidence to support its conclusion. Beyond a reasonable doubt a jury could conclude Weisbeck engaged in a pattern of deceptive behavior intended to get her claim approved, depriving Nationwide of those funds through deceit.

We conclude the evidence can support the jury's verdict on both the identity theft and insurance fraud counts. So we affirm the convictions.

---

[13] Weisbeck testified that she did not let Smith into her home on July 1 because she did not like Smith's son. And she testified she did not let Martinez into the home on July 10 because her daughter was having a sleepover inside and Martinez did not provide identification or verification that he was a Nationwide representative. Martinez testified he was driving an unmarked, company vehicle, because he was doing an investigation, and gave Weisbeck his business card. He could not remember if he was wearing his Nationwide-emblem clothing. Still, Weisbeck appeared to believe Martinez until he asked to go inside the house. The jury could reasonably conclude she was trying to frustrate his investigation and conceal the origin of the photographs she sent.

**B. Evidentiary Rulings**

Weisbeck raises two contentions based on evidence offered at trial. First, she contends the court erred in admitting a court order on her eviction from Smith's property. Next, she contends the court erred in excluding evidence of Smith's felony convictions.

**1. Eviction Notice**

Weisbeck contends the court erred in admitting a "Writ of Removal and Possession," a court order instructing the sheriff to remove Weisbeck from the home after Smith evicted her several months after the events related to these charges. Weisbeck argues the September 2019 document was irrelevant.[14] The State argued it helped establish Weisbeck's motive for committing insurance fraud.

"We review evidentiary rulings for an abuse of discretion." *State v. Wilson*, 878 N.W.2d 203, 210 (Iowa 2016). Evidence is relevant if "[i]t has any tendency to make a fact more or less probable than it would be without the evidence; and [t]he fact is of consequence in determining the action." Iowa R. Evid. 5.401. "A determination of the probative value of relevant evidence focuses on the strength and force of the tendency of the evidence 'to make a consequential fact more or less probable.'" *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000)

---

[14] Weisbeck also raises a claim under Iowa Rule of Evidence 5.403 that the evidence was unfairly prejudicial for encouraging the jury to draw inferences not established in court. As the State says, that was not the basis for the objection at trial (counsel only stated, "the defense objects as to relevance,") so the unfair prejudice claim under rule 5.403 is not preserved for review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

(quoting *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000)). But even if evidence is admitted in error, we reverse only when the party is prejudiced. *Id.*

The district court, in making its ruling, seemed to agree with the State's explanation that the document "goes to the intent of why these crimes were committed." Weisbeck argues it did not contain any information that would help establish that fact. We find Weisbeck was not prejudiced by admission of the writ. The State offered the writ during a series of questions about Weisbeck's financial situation in summer 2019, including that she bounced two rent checks to Smith. Her eviction was an undisputed fact in the record that Smith testified about. So, adding the writ to that evidence only provides somewhat more proof to what the jury already heard about Weisbeck's financial situation and possible motivation to obtain money from the insurer. *See e.g.*, *Wilson*, 878 N.W.2d at 219. Weisbeck cannot show she was prejudiced by admission of the writ.

## 2. Smith's Convictions

Weisbeck contends the district court abused its discretion when it prohibited her from impeaching Smith with her prior felony convictions because it (1) used an incorrect standard to determine the admissibility of prior bad acts evidence; (2) incorrectly articulated the balancing test; and (3) incorrectly stated the date of conviction for the purpose of Iowa Rule of Evidence 5.609. That rule provides when a witness can be impeached by evidence of a criminal conviction.

> a. *In general*. The following apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
> (1) For a crime that in the convicting jurisdiction was punishable by death or by imprisonment for more than one year, the evidence:

(A) Must be admitted, subject to rule 5.403,[15] in a civil case or in a criminal case in which the witness is not a defendant.

(B) Must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant.

(2) For any crime regardless of the punishment, the evidence must be admitted if the crime involved dishonesty or false statement.

b. *Limit on using the evidence after ten years.* This subdivision (b) applies if more than ten years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

(1) Its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

(2) The proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Iowa R. Evid. 5.609. Pretrial, the State moved in limine to exclude evidence of Smith's felony convictions in 2010 for vehicular manslaughter, a class "B" felony, and operating while intoxicated, third offense, a "D" felony. Smith was released on parole in 2016. And at trial, the court gave this rationale for excluding the evidence:

Rule 5.609 and 5.403 do each require a balancing regarding the evidence that is being proffered. In this case the evidence is of a felony conviction now six years old—I'm sorry—felony conviction that is twelve years old but released from incarceration six years ago. That is of an offense that does not involve the honesty of the witness.

. . . .

The Court finds that the probative value of this conviction, being twelve years old, is not outweighed by its potential prejudice and is also not outweighed by the misleading effect it can have upon the jury. This conviction does not go to the witness's honesty or integrity or forthrightness. For those reasons, the motion in limine as filed by the State is granted.

We start with Weisbeck's contention that the court mis-stated the date of her conviction. We agree that the court mentioned both her date of conviction and her

---

[15] Rule 5.403 allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

release from incarceration. We do not think the court misunderstood or misstated that the fact to be considered was her "release from confinement" six years ago under rule 5.609(b). Subsection (b) clarifies that it only "applies if more than ten years have passed since the witness's conviction or release from confinement for it, whichever is later." Despite the mention of twelve years, our read of the court's rationale is that it was not applying subsection (b).

Instead of that specific rule, the court appeared to apply the general rule that the evidence of a felony conviction "must be admitted, subject to rule 5.403, in a civil case or in a criminal case in which the witness is not a defendant." Iowa R. Evid. 5.609(a)(1)(A). This is a criminal case in which the witness is not the defendant. Thus, the evidence is admissible, subject only to a rule 5.403 balancing of prejudice versus probative value. Here we agree with Weisbeck that the court's further mention that the conviction did not "go to the witness's honesty or integrity or forthrightness" is confusing. It implies the court was considering whether the convictions fell under rule 5.609(a)(2), which admits evidence of any conviction "if the crime involved dishonesty or false statement." But we do not think the court was applying an incorrect standard here.

Still, the court returned to a balancing test and determined "the probative value of the conviction, being twelve years old, is not outweighed by the potential prejudice." Again, the court mentioned the conviction being twelve years old. But the age of the conviction can be relevant to how probative it is of Smith's truthfulness. *See State v. Redmond*, 803 N.W.2d 112, 123 (Iowa 2011) (noting that the ten-year exclusion rule "suggests older convictions become less probative"); *State v. Love*, No. 11-0359, 2012 WL 300321, at *4 (Iowa Ct. App.

Feb. 1, 2012) ("Although within the ten-year limit for purposes of the rule, the probative value of the conviction diminishes with each passing year.").

The court then said the probative value "is not outweighed by its potential prejudice and is also not outweighed by the misleading effect it can have upon the jury. . . . For those reasons, the motion in limine as filed by the State is granted." Here, we again agree with Weisbeck: under the rule, the evidence is admissible unless the prejudice outweighs the probative value. The court found that was not the case.[16] But it excluded the evidence anyway. That was an erroneous application of the rule and therefore we find the court abused its discretion.

But again, we cannot determine with any reasonable likelihood that Weisbeck was prejudiced by the omission of this evidence. The evidence of Weisbeck's wrongdoing was plentiful even without Smith's testimony. And Smith's conviction for OWI and vehicular manslaughter twelve years in the past has little bearing on her motivation to be untruthful to the jury as a witness here about insurance fraud related to her property. Thus, the impeachment value of this evidence would have been minimal. We cannot conclude that Weisbeck was prejudiced by the omission.

We find no basis to reverse based on Weisbeck's evidentiary claims, so we affirm the convictions.

---

[16] We must accept the record as it is. But it does appear that the judge's statements of "not outweighed" are inconsistent with the granting of the motion in limine and perhaps the word "not" was inadvertently interjected.

## C. Sentencing

Finally, Weisbeck contests her sentence to two five-year prison terms, suspended, instead of the deferred judgment she requested. We review sentencing challenges for abuse of discretion. *State v. Wickes*, 910 N.W.2d 554, 564 (Iowa 2018). We find an abuse "when the sentencing court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Laffey*, 600 N.W.2d 57, 62 (Iowa 1999) (citation omitted). The challenge must overcome the presumption in favor of the sentence. *State v. Damme*, 944 N.W.2d 98, 106 (Iowa 2020). Weisbeck must show "an abuse of trial court discretion or a defect in the sentencing procedure, such as trial court consideration of impermissible factors." *See State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000) (citation omitted). The court in exercising its discretion should weigh all pertinent matters, including the nature of the offense, the attending circumstances, defendant's age, character, propensities, and chances of his reform. *State v. August*, 589 N.W.2d 740, 744 (Iowa 1999) (citation omitted).

Weisbeck contends the district court acted unreasonably in giving "undue weight to some factors while failing to acknowledge mitigating evidence." And she faults the court for saying it was imposing a sentence to "warn future employers." Finally, she objects that the court observed the offense was "organized" and "required planning," even though it did not require proof of a plan or scheme. We find these latter observations go to the nature of the offense under the particular circumstances of this case. Even if planning or premeditation was not a required element, the court reasonably observed the offenses could be accomplished only with planning. The court did not abuse its discretion in reasoning that those

particular facts contributed to its conclusion a deferred judgment was not warranted.

At sentencing, Weisbeck argued that a felony conviction on her record would preclude her from jobs in her field as an elementary school resource teacher. But "protection of the community from further offenses" is an important and relevant sentencing factor. Iowa Code § 907.5 (requiring the court consider certain factors before deferring judgment, deferring sentence, or suspending sentence). The court found the "criminal thinking" involved "warrant[ed] future employers being warned as to this defendant's past conduct." We see no abuse of discretion in the court considering this as a relevant factor in sentencing.

As for mitigating factors, Weisbeck urged the court to consider that she relied too heavily on her father's advice and her actions were based on "sheer ignorance." The court heard Weisbeck's allocution and stated: "It is the defendant's right to maintain her innocence; however, the Court takes into consideration the fact that a jury of twelve people unanimously found otherwise based on the evidence by proof beyond a reasonable doubt . . . ." The court was within its discretion to give little weight to Weisbeck's explanation for her actions. We find no abuse of discretion in the court's reasoning.

## III. Conclusion

Finding no grounds to reverse, we affirm Weisbeck's convictions and sentence.

**AFFIRMED.**